VOL. 88.]     JANUARY TERM, 1889.     673

Baldwin v. Hewitt, Auditor.   Same v. Whitaker, Auditor's Agent.

CASE 104—PETITIONS—JUNE 8.

# Baldwin v. Hewitt, Auditor.

# Same v. Whitaker, Auditor's Agent.

## APPEALS FROM KENTON CHANCERY COURT.

1. THE COUNTY JUDGE ACTS MINISTERIALLY in assessing property under the statute known as the Auditor's Agent act.

2. INJUNCTION OF TAX.—A court of equity may enjoin the collection of an illegal tax.

3. RIGHT OF TAX-PAYER TO DEDUCT INDEBTEDNESS IN LISTING PROPERTY.— Under section 6 of article 1, chapter 92, General Statutes (Ed. 1883), a tax-payer, in listing his property for taxation, could deduct only such indebtedness as he intended to pay. Therefore, an administrator, in listing the estate of his intestate, had no right to deduct an indebtedness of the intestate which, it is evident, the estate will never have to pay, and which the administrator never expected or intended to pay.

4. SUIT TO RECOVER TAXES. — In the absence of express legislative authority, taxes can not be recovered by suit, and as there is no statute in this State, save as to railroad companies, authorizing a suit to recover taxes, such a suit can not be maintained, even though there be no other adequate remedy.

WM. LINDSAY AND O'HARA & BRYAN FOR APPELLANT.

1. The collection of taxes can not be enforced by suit. If no property can be reached by distraint, or levy, or attachment, that is the end. (Johnson v. Louisville, 11 Bush, 527; McLean County v. Deposit Bank, 81 Ky., 254; Thompson v. Allen, U. S.)

   The remedies to enforce the collection of State taxes are full, ample and complete. (Gen. Stats., chapter 92, art. 9, section 8, p. 1073; *Idem*, pp. 1081, 1082, 1083.)

2. In listing Bowler's estate for taxation, the Kentucky indebtedness should have been set off against the assets. It does not matter that Baldwin was not called upon to pay any portion of the debts and demands secured by the bond in the Winslow suit. If that bond constituted an

674            KENTUCKY REPORTS.            [Vol. 88.

Baldwin v. Hewitt, Auditor,    Same v. Whitaker, Auditor's Agent.

outstanding Kentucky indebtedness, he was entitled to have it set off against the assets in his hands.

H. P. WHITAKER FOR APPELLEE.

1. The debt which appellant seeks to have deducted is not a debt which he intends in good faith to pay, and is therefore not such an indebtedness as the statute gives him the right to have deducted. (Gen. Stats., chap. 22, art. 1, sec. 6.)

   If Bowler was in fact a trustee at the purchase in 1859, the judgment of 1872 declaring him such related back and made appellant and the heirs trustees from the time of the purchase by Bowler in October, 1859, to the 6th of May, 1875, when by a compromise the whole matter was settled, including the debt sought to be set off herein. (Wonson v. Sayward, 13 Pick., 402; Nye v. Otis, 8 Mars., 126; Hamilton v. Davis, 5 Burr, 2738.)

2. The property was subject to the tax. The estate followed the administrator and was annexed to his person, thereby having an actual *situs* in this State. (Baldwin v. Shine, 8 Ky. Law Rep., 501.)

3. It is too late to raise the question of jurisdiction for the first time in this court.

4. The plaintiff had the right to sue for the taxes by virtue of section 17, of article 11, chapter 92, General Statutes. But even if that section does not apply, the plaintiff had the right to sue, because there was no other adequate remedy. (Johnston v. Louisville, 11 Bush, 527; 14 Ill., 83; 15 Ill., 9.)

HALLAM & MYERS OF COUNSEL ON SAME SIDE.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

July 13, 1887, E. C. Baldwin, administrator of R. B. Bowler, brought an action in the Kenton Chancery Court to enjoin H. P. Whitaker from taking any steps to collect taxes, amounting to over $23,000, which had, upon a proper information filed by him as auditor's agent in the county court, and upon hearing by it, been assessed against the estate in the administrator's hands for the years 1866 to 1882, inclusive.

The statute relating thereto provides: "That in addition to other duties imposed by law, it shall be his "[auditor's agent] duty, where any person in this Com-

" monwealth has failed to give in his list, or a proper list
" of his taxable property, to give information of the same
" to the county court of the county where such list
" should have been given; and said court shall issue a
" summons against such person to appear before said
" court in ten days after service, and list his property for
" the year or years he has failed to do so; and if, upon
" hearing, the court is satisfied of such failure to list and
" pay taxes, it shall assess and fix the value of same, with
" interest at ten per cent., and certify same to the aud-
" itor, and place it in the hands of the sheriff or collector,
" who shall collect and account for the same as for other
" taxes."     (Gen. Stats., ed. 1887, p. 1113.)

The county court appointed Auditor Agent Whitaker
to collect the taxes.

The sheriff of a county is, by virtue of his office, the
collector of the revenue.    If, however, he fails to execute
bond therefor, the statute authorizes the county court to
appoint a collector.

The statute above cited, in speaking of " a collector,"
doubtless refers to a case where one has been appointed
in place of the sheriff; but it is unnecessary to a settle-
ment of this controversy to determine whether the county
court had the power to appoint the agent of the auditor
collector of these taxes in place of the sheriff, owing to
the conclusion we have reached as to the right to sue for
them, and because the statute evidently intended that
the auditor's agent should have the general supervision
of such matters in his county.

The county court in making such an assessment merely
does what the assessor has failed to do.    That in the

exercise of this power it acts ministerially; and that a court of equity may enjoin the collection of an illegal tax, was held by this court in the case of Baldwin v. Shine, 84 Ky., 502, which was a case relating to this very assessment.

The property which had been in the hands of the administrator consisted altogether of choses in action. There was no visible property of any character in Kentucky belonging to the estate. The heirs of Bowler resided in Ohio, and prior to the filing of the information in the county court the administrator had settled his accounts and disbursed to them the entire fund, which had been in his hands during the years for which the assessment was subsequently made. The county court in making it acted under what was known as "the equalization law," and which, as then in force, authorized the tax-payer, in assessing estates of the character of that held by Baldwin, to deduct his indebtedness, thus taxing only the surplus.

The administrator rests his claim to an injunction upon the ground that the assessment was void, because, as he claims, there was, during all the years covered by it, a *bona fide* indebtedness upon the estate, and which it expected to pay, more than equal to the assets. If this be true, then his right to enjoin the collection, however attempted, of the tax must be sustained. It is apparent if the claim, which it is said was such an indebtedness under the statute as to authorize it to be considered in making the assessment, was in truth such, that then it at all times exceeded the assets in his hands, and there was therefore no taxable estate.

July 14, 1887. an action was instituted in the Kenton

Circuit Court, in the name of the State auditor, the auditor's agent and the Commonwealth against Baldwin, as administrator, for the recovery of the taxes.   The petition avers a demand and refusal to pay, and the inability to find any estate for distraint for payment.   A recovery was resisted upon the same ground upon which the administrator claimed the right to enjoin their collection.

The ordinary action was transferred to the Kenton Chancery Court, the two suits were consolidated, and, upon hearing, the Chancellor by one judgment denied the administrator's right to any injunction, and rendered judgment against him for the taxes, with interest from the time when the suits were brought.   He has appealed as to both actions.

Two questions are presented : 1.  Did an indebtedness, such as the statute recognizes, exist ?   2.  Can a suit for the taxes, if they were leviable, be maintained ?

Section 6, article 1, chapter 92, of the General Statutes (Ed. 1883), in defining the character of indebtness which could be deducted by the taxpayer, says : " The indebt-" edness which may be deducted, as aforesaid, must be " just and honest debts owing as principal, and not as " surety, and created for a valuable consideration, *which* " *the person intends to pay*, and not with a view to lessen " the amount of his taxable property."

In 1859 R. B. Bowler bid in the Covington & Lexington railroad, at a sale made under a decree of the Fayette Circuit Court, at the price of $2,125,000.   The judgment did not require the purchaser to give bond with security, as is usual.   The sale was made to pay certain bonds of the railroad company, and as a security that the purchase

money, so far as it might pay the same, should be applied thereon, a lien was retained upon the property. The purchaser was to make certain cash payments, give assurance that the road should be kept in repair, and also deposit collaterals in the form of bonds, mortgages, etc., as security. This Mr. Bowler did, and the sale was reported to court and confirmed. Subsequently some other parties became interested in the road with him, and a joint stock company was formed for the purpose of operating the road. To this end, in January, 1863, Bowler conveyed to trustees, in trust for the benefit of the stock company, everything which he had acquired by his purchase in 1859. A lien was, however, retained for $1,737,000 of the mortgage bonds, that being the sum yet unpaid of the purchase money, and it was stipulated that it was to be paid primarily by the trustees, and the property, and all that the association might acquire, was to be primarily liable for it. Briefly stated, the trustees were to take Bowler's place under the purchase, so far as the same remained unsettled.

February 11, 1864, the parties went into the Fayette Circuit Court, and it being shown what had been done, as above recited, Bowler was permitted to withdraw the collaterals he had deposited by way of security, and others in lieu thereof were deposited by the trustees.

September 30, 1865, the Covington & Lexington Railroad Company brought an action in the Kenton Circuit Court against the trustees and Bowler's heirs, he being then dead, seeking to have his purchase declared to have been made in trust for it. The action was dismissed, but upon appeal to this court the judgment was reversed, the

opinion holding that upon the record as presented the purchase was one in trust for the company. (9 Bush, 468.) No final decree was directed to be rendered, however, in the lower court, because it was found that the heirs of Bowler, or at least some of them, had not been brought before the court. Upon the return of the cause to the lower court it was, in 1875, compromised and dismissed. As a result the Kentucky Central Railroad Company was organized, the road transferred to it, upon condition that it assume and pay the $1,081,000 of bonded indebtedness of the Covington & Lexington Railroad Company. The administrator of Bowler was a party to this compromise, and presumably familiar with the history of the whole matter.

It is evident that Mr. Bowler never expected, nor did his administrator intend or expect, to pay this alleged indebtedness. If any personal liability upon the part of Bowler for it ever existed, he and his estate had been released therefrom, not in express words by any judgment, but in effect. It was certainly not an indebtedness within the meaning of the statute. It was not one which Bowler, or his administrator after him, "intended to pay." The latter says he intended to pay it "*if required.*" If he knew it was actually owing by the estate, it is strange that with his business experience he should, during his administration, have disbursed over a million and a half of dollars to the heirs, leaving nothing in his hands with which to pay it. The inference is irresistible. He did not think the estate owed it, and he never expected or intended to pay it. The estate never has paid any of it, and undoubtedly will never have to do so. It should

not have been estimated, therefore, in making the assess-
ment, and hence it is not void or the tax illegal.

The other question is not free from difficulty.

There is no statute in this State, save as to railroad
companies, authorizing a suit against the taxpayer for
his taxes.　Section 17, article 11, chapter 92, of the Gen-
eral Statutes (Ed. 1883), confers no such right.　It relates
to actions against defaulting collectors of the revenue.
The title so shows.　If, therefore, such a right exists, it
must be by virtue of the general law.

The exercise of the power of taxation is legislative,·
and not judicial in character.　Neither the levy or col-
lection of taxes is an inherent power of the judiciary.
It has ordinarily no more power to collect them than it
has to levy them.　These are not judicial acts.

The power to provide for the public welfare, by means
of the sovereign power of taxation, has, under the dis-
tribution of governmental powers in this country, been
given to the legislature.　Taxes can, therefore, be col-
lected only through legislative authority.　If it does not
exist, the remedy is an appeal to the law-making power
for additional legislation.

The taxes in question were not levied in obedience to a
contract, obligation or under judicial direction.　They are
not a debt in the legal meaning of the term.　Debts are
obligations founded upon contracts, express or implied.
The consent of the taxpayer is not necessary, however,
to the imposition of a tax; it comes *in invitum*.　The
payment of it is rather a duty which the citizen owes to
his government in return for the protection given to his
person and his property.

These views are supported by repeated judicial utterance in this State, and also by that of the Supreme Court of the United States. (McLean County Precinct v. Bank, 81 Ky., 254; Jones v. Gibson, &c., 82 Ky., 561; Meriweather v. Garrett, 102 U. S., 472; Thompson v. Allen County, 115 U. S., 550.)

It is true, that although the collection of taxes is a ministerial act, yet the legislature may empower, and even require, the judiciary to do in a judicial way what ordinarily belongs to the executive branch of the government. The remedy by suit may be given by statute. This, however, has not been done.

It is urged, however, that here the assets were intangible; that, in fact, there are none now in the State, the administrator having removed them by distribution; that it was his duty to pay the taxes; that he is liable as for a *devastavit*, and that no relief can be had unless a judgment can be obtained against him. In short, that there is no remedy unless it can be had by judicial proceedings. We are aware that this court has said that such a peculiar state of case might possibly be presented as to authorize them, and that it has so been held by the courts of one State and probably others. (Ryan v. Gallatin County, 14 Ill., 78.) The ruling has been based upon the ground of inadequate remedy. This court has, however, never assented absolutely, even *per dictum*, to this doctrine; and after all the thought possible for us to give it, we are satisfied that the highest considerations of public policy forbid it.

If the judiciary may interpose whenever the legislature fails to provide adequate means for the collection of

taxes, then the theory of our government as to the distribution of its powers, and which it is conceded upon all hands is vital to its proper conduct, is destroyed. If it may do so upon one state of case it may do so in as many as may be presented. No limit can be prescribed. If the taxpayer has made a voluntary or fraudulent transfer of his estate, whatever its character, then resort will be had to a suit to collect his taxes, upon the ground that there is no other adequate remedy.

If Baldwin may be proceeded against by suit because he is an insolvent delinquent, then the same course may be adopted as to other like delinquents. The courts will be burdened with suits for the collection of taxes, and the policy and construction of our law, which has prevailed for the nearly a century's existence of our State government, will be violated.

The legislature has expressly provided that a railroad corporation may be sued for its taxes. (General Statutes, section 5, article 3, chapter 92.) This grant of power was given to avoid the evils which would result to the public from a distraint of the property; and the enactment implies the existence of a legislative opinion that in its absence no such suit could be maintained.

In view of this settled policy of the State, the judiciary should not imply a power to itself in violation of it, but confine its jurisdiction, in the absence of other legislation, to compelling the proper performance of their duties by the collection officers. The statute confers this power upon it, and in case of non-payment by them they may properly be proceeded against as for debt.

The same reasons which forbid a court to levy a tax

forbid it from assuming the power to collect it. The need of the State and the welfare of the citizen require it to be done speedily, and yet without expensive litigation; and if the means for collection provided by the legislature prove defective or inadequate, resort should not be had to the courts, but under the constitution the legislature must, by amended legislation, supply the defect.

It is unnecessary to notice the cross-appeal, seeking the recovery of more interest than the lower court allowed. It falls with the denial of the right to sue for the taxes.

The judgment, in so far as it dismissed the action of the appellant to enjoin the collection of the tax, is affirmed; but so much of it as rendered judgment in the other suit for the taxes is reversed, with directions to dismiss the action.

Each party will pay his own costs in this court.