# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS

---

### PRESTON v. STURGIS MILLING CO.

(Circuit Court of Appeals, Sixth Circuit. December 1, 1910.)

#### No. 2,035.

1. TAXATION (§§ 2, 26*)—CONSTITUTIONAL LAW (§ 68*)—NATURE AND SOURCE OF TAXING POWER.

It is a fundamental principle that the power of taxation is legislative and cannot be exercised otherwise than under legislative authority. The scope of such principle is that each step in the process of taxation from beginning to end can be taken only as the Legislature may prescribe, and that courts may exercise the power of taxation in respect to any of such steps only when, and to the extent, the Legislature has so provided. Even where there has been an assessment and levy of the tax, so that the amount due from each taxpayer is exactly ascertainable, in the absence of legislative authority a court has no power to collect the tax and pay it over to the party entitled thereto.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 2; Dec. Dig. §§ 2, 26;* Constitutional Law, Cent. Dig. § 125; Dec. Dig. § 68.*]

2. EQUITY (§ 46*)—GROUNDS OF JURISDICTION—INADEQUACY OF LEGAL REMEDY.

The scope of the general principle of equity jurisprudence that, all legal remedies having failed, equity should give a remedy, is that the legal remedy in its nature or character must be inadequate, and the principle does not apply if such remedy is adequate in theory and in law, but, owing to external causes not contemplated by the law, it cannot be enforced.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159, 163; Dec. Dig. § 46.*]

3. TAXATION (§ 585*)—PRIVATE ACTION FOR COLLECTION OF TAX—JURISDICTION OF COURT.

Act Ky. Feb. 18, 1870 (Sess. Acts 1869–70, c. 366), provided for the issuance of bonds in aid of the construction of a railroad, for the levy of a tax to pay such bonds, which "shall be a lien on the real estate of the person taxed," and that the tax should be collected by the sheriff, or on his failure to give the required bond by a commissioner to be appointed by the county court, who should have power to levy upon and sell real estate of the person taxed as on execution. Complainant recovered judgments in a federal court on bonds issued by a district under such act, for the payment of which assessments were made and a tax levied as provided therein; but its collection was forcibly prevented by the taxpayers of the district, and thereupon complainant brought suit in such federal

court against a single taxpayer for collection of the tax assessed against him by enforcing the lien given by the statute on his real estate. *Held* that, in the absence of legislation expressly authorizing such a proceeding, the court had no power to grant the relief sought.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1185, 1188, 1189; Dec. Dig. § 585.*]

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

Suit in equity by A. J. Preston against the Sturgis Milling Company. Decree for defendant, and complainant appeals. Affirmed.

See, also, 183 Fed. 19, 20.

Helm Bruce (Helm & Helm, of counsel), for appellant.

H. X. Morton and James F. Fairleigh, for appellee.

Before SEVERENS and WARRINGTON, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. The appellant, Preston, was complainant in the court below, and he appeals from a decree dismissing his bill on demurrer. The relief which he sought was the subjection of certain specifically described real estate owned by the defendant, Sturgis Milling Company, appellee here, located in the town of Sturgis within the Caseyville district of Union county, Ky., to the payment to him of the sum of $7,155.74 and costs. He claimed that there was lien on the real estate for that amount and that he was entitled to enforce it. The way in which he claimed that this lien had arisen and that he had become entitled to enforce it was this:

Theretofore he and his wife, who had since died, had obtained several judgments in the lower court on its law side against the Caseyville district for the principal and interest of certain bonds duly issued on its behalf under an act of the Legislature of Kentucky entitled "An act to incorporate the Madisonville and Shawneetown Straight Line Railroad Company," approved February 18, 1870 (Sess. Acts 1869–70, vol. 1, p. 342, c. 366), in aid of the construction of the railroad, which if built was to run through the district, upon which judgments executions had issued and been returned unsatisfied; and pursuant to the provisions of the act a tax sufficient to pay the judgments had been duly levied, and the property subject thereto had been duly assessed. The appellee owned taxable property within the district, of which that sought to be sold was a part, and $7,155.74 was the amount of the tax due from it according to the levy and assessment. The act provided that the tax authorized by it should be collected by the sheriff of the county upon his giving bond therefor, and that upon his failure for 30 days after its levy to do so he should forfeit his office, and the county court should appoint a collector who upon giving bond should collect the tax. By section 25 thereof it was provided as follows, to wit:

"That sheriffs and other officers having in their hands for collection taxes levied under this act shall have all the powers of distraining and selling personal property which sheriffs have in the collection of the state revenue; and when such officer shall be unable to find personal property liable to sale for

the unpaid tax of any individual, he may levy the same on any real estate of such person situated in the county and shall sell the same under the regulations prescribed by law for the selling of real estate under execution; and all taxes levied under this act shall be a lien on the real estate of the person taxed, which shall lie in the county in which such tax is levied; but the owner of any real estate sold may redeem the same at any time within five (5) years after such sale, by paying the purchase money and ten (10) per cent. per annum thereon, with all taxes of every description paid by the purchaser after his purchase, and ten (10) per cent. per annum thereon."

The taxpayers of the district had repudiated its indebtedness incurred in aid of the construction of the railroad and determined to prevent its collection, and, if violence was necessary to this end, to resort to it. The sheriffs of the county from fear, or from sympathy with the position of the taxpayers, had repeatedly refused to give bond for the tax, or, after doing so, had resigned, so that, for much the greater portion of 18 years previous to the bringing of this suit, the county had been without a sheriff. Collectors had from time to time been appointed, but with a single exception had refused to qualify or resigned after qualifying. In that instance the collector appointed had proceeded to the performance of his duty by distraining the personal property of one of the taxpayers and advertising same for sale at the county seat, but on the day of sale a crowd of 600 or 800 armed men assembled there, and not only prevented the sale, but compelled the collector to flee the county for his life, to which he had never returned.

It was by virtue of the clause in section 25 of the act in these words, to wit:

"And all taxes levied under this act shall be a lien on the real estate of the person taxed, which shall lie in the county in which such tax is levied"

—that appellant claimed that there was a lien on appellee's real estate for that sum, and it was because of his inability to collect it otherwise that he claimed that he was entitled to enforce this lien. The facts stated appeared from the allegations of the bill which were admitted to be true for the sake of the demurrer.

The lower court denied appellant the relief he sought on the ground that there was no legislation authorizing its granting. It has been earnestly and ably argued here that he is entitled to such relief; but, after carefully considering all that has been said, we are constrained to hold that the lower court's position was well taken, and that it was powerless to relieve the situation.

Before stating more in detail than above the grounds upon which it is claimed that appellant is entitled to the relief which he sought, we desire to make good the fundamental principle which underlies the lower court's decision and to indicate its scope. That principle is that the power of taxation is legislative and cannot be exercised otherwise than under legislative authority. It seems to us that if one will enter into the possession of this principle and comprehend its full scope he will have no difficulty in reaching the conclusion that the decision was correct. The scope of the principle is that each step in the process of taxation from beginning to end can be taken only as the Legislature may prescribe. This is true of the levy of the tax, of the assessment of the property subject thereto, if it be an ad valorem tax, of the col-

lection of the tax, and of its disbursement after it has been collected. Courts of law by the writ of mandamus have power to compel persons charged with the performance of these duties to perform them. But in exercising such jurisdiction they do not to any extent exercise the power of taxation. That power is exercised only in the taking of any of the steps in the process of raising and disbursing taxes. It is not, however, within the scope of this principle that the judiciary shall in no event exercise this power of taxation. Its scope is that it shall not exercise it unless the Legislature shall so provide. If the Legislature does so provide, it may exercise it to the extent provided.

That this is a fundamental principle of jurisprudence, and that such is its scope, has been settled beyond question by the Supreme Court of the United States in the following cases, to wit: Rees v. Watertown, 19 Wall. 107, 22 L. Ed. 72; Heine v. Board of Levee Commissioners, 19 Wall. 655, 22 L. Ed. 223; Barkley v. Board of Levee Commissioners, 93 U. S. 258, 23 L. Ed. 893; Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197; Thompson v. Allen County, 115 U. S. 550, 6 Sup. Ct. 140, 29 L. Ed. 472.

Each one of these cases had to do with a tax duly authorized to be raised from the taxpayers within a certain political legal entity to pay certain obligations incurred by it, and in each one the tax had not been paid, and a United States Circuit Court had been appealed to for its assistance in enabling the holder of such obligations to obtain the tax. In the first three cases the tax had never been levied, and the relief sought was its levy, collection, and payment to plaintiff. No relief was sought as to the assessment of the property subject to the tax unless that was included in its levy. Possibly the assessment of property for general purposes answered the purpose of an assessment as to the particular tax involved. In the last two cases the tax had been levied and property assessed, and the relief sought was the collection of the tax and its payment to plaintiff.

We will first dispose of the three cases in which no levy had been made. In the Rees and Heine Cases there was opposition to the payment of the tax, and its levy had been evaded by the officials whose duty it was to make it, or so many of them as not to leave a quorum, resigning; in the Barkley Case there had been no evasion. The trouble there was that the political legal entity had ceased to exist and the officials whose duty it was to levy the tax had gone out of office with such cessation. In the Rees and Barkley Cases judgments had been obtained at law for the amount of the indebtedness and executions returned thereon unsatisfied; in the Heine Case no such judgment had been obtained. The indebtedness there was simply due and unpaid. In the Rees and Heine Cases the relief was sought in equity; in the Barkley Case at law, by the writ of mandamus. In all three cases the way in which levy, collection, and payment of the tax was sought was by a direction to the United States marshal for the district to levy, collect, and pay. It is not so clear that this was so in the Heine Case, at least from Mr. Justice Miller's opinion therein. But it appears from the brief of counsel for the appellant as given in the Lawyer's Cooperative Publishing Company's edition of the Supreme Court Re-

ports that such was the case. The suit had been originally brought against the officials whose duty it was to make the levy. They set up that they had resigned and disclaimed any interest in the matter. Thereupon an amended bill was filed against the defendants as representative taxpayers seeking to have the United States marshal directed to levy, collect, and pay the tax. The breadth of the opinion of Mr. Justice Miller calls for this condition of things. Otherwise it would have been sufficient to have limited the opinion to the case as made by the original bill and held that it was not maintainable because there was an adequate remedy at law, to wit, mandamus, of which the lower court had no original jurisdiction, but only as ancillary to a judgment for the amount of the indebtedness, which had not been obtained. He did not so limit the case, but considered it as if direction to the marshal to levy, collect, and pay had been sought, the right to which relief was not affected by the fact that no judgment had been obtained. In the Rees Case relief beyond a direction to the marshal to levy, collect, and pay was sought, in addition to such direction. It was sought also that the court itself apportion the indebtedness amongst the taxpayers and then direct the marshal to collect the apportioned amounts from each, or in default to sell his property, which Mr. Justice Hunt said would accomplish the same result as a direction to the marshal to levy, collect, and pay, but "under a different name."

The Supreme Court held in each one of these cases that the lower courts had properly denied the plaintiffs the relief sought; Justices Clifford and Swayne dissenting in the first two. And just here it is important to understand the reason why it so held, because appellant's counsel would deny these decisions any relevancy here because in those cases no levy had been made; whereas, here a levy and assessment had been made and the exact amount of tax due from the appellee had been ascertained before suit was brought. It was not because the machinery of a court of equity or a court of law was not adequate to making or bringing about a levy and assessment which are but steps in an apportionment. The Supreme Court, in the earlier case of Lee County v. United States, 7 Wall. 175, 19 L. Ed. 162, had affirmed the judgment of the United States Circuit Court for the District of Iowa in a case at law awarding a mandamus against the United States marshal for that district commanding him to levy and collect and pay a tax. This it did because there was legislation in Iowa authorizing similar action by its courts. In the case of Rees v. Watertown, Mr. Justice Hunt had this to say as to the adequacy of the machinery of a court of equity in this particular, to wit:

"The difficulty and embarrassment arising from an apportionment or contribution amongst those bound to make the payment we do not regard as a serious objection. Contribution and apportionment are recognized heads of equity jurisdiction, and, if it be assumed that process could issue directly against the citizens to collect the debt of the city, a court of equity would make the apportionment more convenient than a court of law."

Mr. Justices Clifford and Swayne had no idea that there was any such inadequacy. They thought that the plaintiffs in the Rees and Heine Cases were entitled to the relief which they sought, placing their position on the ground that the tax was a trust fund and equity would

never suffer a trust to be defeated by the refusal of the trustee to administer the fund.

The real ground of the decision in each of these cases was the fundamental principle which we have put forward, to wit, that the power of taxation is legislative and cannot be exercised otherwise than as the Legislature provides. The lower courts had no power to direct a levy and assessment or itself to make one because to do so would be to exercise the power of taxation and this power had not been conferred on the judiciary by the Legislature. In the Rees Case Mr. Justice Hunt said:

"This power to impose burdens and raise moneys is the highest attribute of sovereignty and it is exercised, first, to raise money for public purposes only; and, second, by the power of the legislative authority only. It is a power that has not been extended to the judiciary. Especially is it beyond the federal judiciary to assume the place of a state in the exercise of this authority at once so delicate and so important."

In the Heine Case Mr. Justice Miller said:

"The power we are here asked to exercise is the very delicate one of taxation. This power belongs in this country to the legislative sovereignty, state or nation. In the case before us, the national sovereignty has nothing to do with it. The power must be derived from the Legislature of the state. So far as the present case is concerned, the state has delegated the power to the levee commissioners. If that body has ceased to exist, the remedy is in the Legislature either to assess the tax by special statute or to vest this power in some other tribunal. It certainly is not vested as in the exercise of original jurisdiction in any federal court. It is unreasonable to suppose that the Legislature would ever select a federal court for that purpose. It is not only not one of the inherent powers of the court to levy and collect taxes, but it is an invasion by the judiciary of the federal government of the legislative functions of the state government. It is a most extraordinary request, and a compliance with it would involve consequences no less out of the way of judicial procedure, the end of which no wisdom can foresee."

And in the Barkley Case Mr. Justice Bradley said:

"The truth is that a party situated like the present petitioner is forced to rely on the public faith of the Legislature to supply him a proper remedy. The ordinary means have failed by the lapse of time and the operation of unavoidable contingencies. It is to be presumed that the Legislature will do what is equitable and just; and in this case legislative action seems to be absolutely requisite."

Such being the ground of decision in these cases, they are direct authorities in support of the position that where a levy and assessment has been made the judiciary have no power to collect and pay the tax whose amount has thus been exactly determined, since for it to exercise such power would be to exercise the power of taxation which it cannot do in the absence of legislation. If it cannot levy, collect, and pay because to do so would be to exercise such power, it cannot for the same reason collect and pay. Hence those decisions are relevant here, notwithstanding there has been a levy and assessment.

This brings us to the other two cases which are more in point because in each of them there had been a levy and assessment and the amount of tax due from each taxpayer had been rendered exactly ascertainable and the relief which was sought was limited to a collection

of the tax and payment thereof to the plaintiff. In the Garrett Case there had been no evasion of the indebtedness. The political legal entity there concerned was the city of Memphis. By mismanagement its financial affairs had gotten in a bad shape and it had become insolvent. A large portion of taxes which had been levied for general purposes and specifically to pay certain indebtedness had been allowed to remain uncollected past the time they should have been collected through carelessness and incompetency of the officials chargeable therewith. That suit was then brought in the lower court for the appointment of a receiver to, amongst other things, collect the unpaid taxes and apply those which had been so specifically levied on the debts which they had been levied to pay. Within a very short time after the bringing of the suit the Legislature of Tennessee took a hand in the matter. It repealed the city's charter and provided for the government of its territory in another way and for the appointment of a collector of the taxes which were unpaid whose duty it was to collect them and apply them to the purposes for which they had been levied, and that position was thereafter filled. The lower court granted the relief sought, but on appeal the Supreme Court reversed the decree and ordered the bill dismissed. This it did because the granting of the relief sought was an exercise of the power of taxation and that the lower court had no right to exercise in the absence of legislation. Mr. Chief Justice Waite announced the conclusions of the court in eight brief propositions. The third one is in these words:

"The power of taxation is legislative and cannot be exercised otherwise than under the authority of the Legislature."

It is here that we obtained the phraseology in which we have stated the fundamental principle in question.

In the fourth proposition, as to the taxes in question, he said that they could not "be collected through the instrumentality of a Court of Chancery at the instance of the creditors of the city." "Such taxes," he said, "can only be collected under authority from the Legislature. If no such authority exists, the remedy is by appeal to the Legislature, which alone can grant relief." Then as if there could be some possible question as to the scope of said principle, he said:

"Whether taxes levied in obedience to contract obligations or under judicial direction can be collected through a receiver appointed by a Court of Chancery if there be no public officer charged with authority from the Legislature to perform that duty is not decided, as the case does not require it."

Mr. Justice Field on behalf of himself and Justices Miller and Bradley delivered an opinion in which he set forth their reasons for concurring in those conclusions. In it he cited the Rees, Heine, and Barkley Cases as controlling of the case there involved, notwithstanding the fact that there had been no levy in either one of them, and a levy had been made in the case in hand. And for the reasons heretofore given it must be held that they were controlling. In the course of the opinion he recurred again and again to a statement of the fundamental principle which we are emphasizing as if he felt it important to drive it home. He said:

"In the distribution of powers of government in this country into three departments the power of taxation falls to the Legislature. It belongs to that department to determine what measures shall be taken for the public welfare and to provide the resources for the support and due administration of the government throughout the state and all its subdivisions. Having sole power to authorize the tax, it must equally possess the sole power to prescribe the means by which the tax shall be collected and to designate the officers through whom it shall be enforced."

He quoted these words from the opinion of Mr. Justice Bradley in the lower court in the Heine Case:

"The judicial department has no power over the subject. If the officers who are charged with the duty of laying or collecting the taxes refuse to perform their functions, the court in a clear case of failure, and at the instance of a party directly interested, can, by the prerogative writ of mandamus, compel them to perform acts which are ministerial, as distinguished from judicial or discretionary. This is all that the judicial department can do on the subject, unless the Legislature has expressly conferred upon it further powers."

Again he said:

"These authorities—and many other to the same purport might be cited— are sufficient to support what we have said, that the power to levy taxes is one which belongs exclusively to the legislative department, and from that it necessarily follows that the regulation and control of all the agencies through which taxes are collected must belong to it."

And again he said:

"No federal court, either on its law or equity side, has any inherent jurisdiction to lay a tax for any purpose, or to enforce a tax already levied, except through the agencies provided by law. However urgent the appeal of creditors and the apparent hopelessness of their position without the aid of the federal court, it cannot seize the power which belongs to the legislative department of the state and wield it in their behalf."

Finally, concerning the power of the federal judiciary, he said:

"It cannot make laws when the state refuses to pass them. It is itself but the servant of the law. If the state will not levy a tax or provide for one, the federal judiciary cannot assume the legislative power of the state and proceed to levy the tax. If the state has provided incompetent officers of collection, the federal judiciary cannot remove them and put others more competent in their place. If the state appoints no officers of collection, the federal judiciary cannot assume to itself that duty. It cannot take upon itself to supply the defects and omissions of the state Legislature. It would ill perform the duties assigned to it by assuming the power properly belonging to the legislative department of the state."

Justices Strong, Swayne, and Harlan dissented. Justice Strong delivered a dissenting opinion. The ground upon which he based the position that the lower court had the right to appoint a receiver was the same as that upon which Justices Clifford and Swayne dissented in the Rees and Heine Cases. He contended that the decision in those and the Barkley Case was not controlling of the one in hand on what we think we have shown to be the untenable ground that in neither one of those cases had there been a levy; whereas, in that one there had.

This brings us to the other one of the two cases, the last one cited. Its origin is to be found in the reservation made by Mr. Chief Justice Waite in his fourth proposition, which we have quoted. It came from Kentucky. There a tax had been levied by the appropriate officials of

Allen county to pay two judgments rendered against it by the United States Circuit Court for the District of Kentucky for interest upon bonds issued by it in aid of a railroad, and the act under which the tax was levied provided for the appointment of a collector to collect the tax and pay it over in satisfaction of the judgment. By reason of the hostility of the citizens and taxpayers of the county, no one could be found who would accept the position of collector and perform the duties of the position. Thus was brought about the situation covered by that reservation. There was no public officer charged with authority from the Legislature to perform the duty of collecting the tax. Thereupon a bill in equity was filed for the appointment of a receiver to collect the tax, and the question was presented whether in that contingency it was proper to grant the relief sought. The county and 30 of the principal taxpayers thereof were made defendants, and the value of the assessed property of each and the amount of tax due from him was set forth in the bill. It was held that the plaintiff was not entitled to the relief he sought. The decisions heretofore considered, both those where there had been no levy and the Garrett Case, where there had been one, were cited as controlling. In his opinion on behalf of the court, Mr. Justice Miller said but little as to the power of taxation being legislative and not capable of being exercised otherwise than under legislative authority. He referred to it mainly in quotations made from the opinions in the previous cases. He gave the matter a somewhat different turn by emphasizing that what was asked was in effect the filling by the federal court of the vacancy in the state office of tax collector occasioned by the refusal of any one to act, which it had less right to do than to fill a vacancy in the position of United States marshal.

It was this fundamental principle that the power of taxation is legislative and cannot be exercised otherwise than under legislative authority, recognized and applied in these cases, then, which lay at the bottom of the lower court's decision. And it was this principle, in connection with the position that section 25 of said act did not authorize the granting of judicial relief, of the kind sought herein, that led the court to render the decree of dismissal. We will not now consider the question whether the act did contain such authority, but proceed to take up the grounds upon which it is urged that the lower court erred in so doing, which we are now in position to appreciate. In the course of the consideration thereof that question will arise for determination.

We do not understand that the inadequacy of the summary mode of collection provided for by section 25 due to the hostility of the taxpayers and the inability to get any one to act as collector and the absence of any other relief at law are relied on by themselves independently of any other consideration as affording a right to the equitable relief sought. So far as they are relied on at all, it is as a buttress to or part of other grounds. They certainly cannot be relied on as a ground of right to such relief in and of themselves.

This matter was dealt with in the cases we have analyzed, mainly in the Rees and Thompson Cases, and it was held that there was nothing in the general principle of equity jurisprudence that, all legal remedies

having failed, equity should give a remedy to warrant a court of equity granting relief in cases like those involved there and here. The scope of that principle is that the legal remedy in its nature or character must be inadequate, which cannot be said of the summary remedy provided by section 25. It is not sufficient that it is inadequate because those charged with executing it will not do so from fear or are prevented from so doing by hostility on the part of the taxpayers. In the Rees Case Mr. Justice Hunt said:

"The remedy is in theory and in law adequate. The difficulty is in its execution only. The want of a remedy and the inability to obtain the fruits of a remedy are quite distinct, and yet they are confounded in the present proceeding. To illustrate: The writ of habere facias possessionem is the established remedy to obtain the fruits of a judgment for the plaintiff in ejectment. It is a full, adequate, and complete remedy. Not many years since there existed in Central New York confederations of settlers and tenants disguised as Indians and calling themselves such, who resisted the execution of this process in their counties and so effectually that for some years no landlord could gain possession of his land. There was a perfect remedy at law, but through fraud, violence, or crime its execution was prevented. It will hardly be argued that this state of things gave authority to invoke the extraordinary aid of a Court of Chancery. The enforcement of the legal remedy was temporarily suspended by means of illegal violence, but the remedy remained as before. It was the case of a miniature revolution. The courts of law lost no powers; the Courts of Chancery gained none."

And in the Thompson Case Mr. Justice Miller said:

"By inadequacy of the remedy at law is here meant, not that it fails to produce the money—that is a very usual result in the use of all remedies—but that its nature or character is not fitted or adapted to the end in view."

The statement of Mr. Justice Fuller in the case of Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, 32 L. Ed. 1005, that:

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief *and the mode of obtaining it is as efficient* as the remedy which equity would confer under the same circumstances"

—and of Mr. Justice Blatchford in the case of Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. 340, 36 L. Ed. 82, that:

"Under section 723, Rev. St.,[1] the remedy at law, in order to exclude equity, must be *as practical and efficient to the ends of justice* and its prompt administration as the remedy in equity"

—which appellant's counsel have quoted, the italics being his, do not import any other doctrine. What is meant is that the remedy must be "as efficient" or "as practical and as efficient" in its nature or character.

Nor does the rule that equity has jurisdiction to subject property fraudulently conveyed by a debtor to the payment of his debts after judgment and return of an execution unsatisfied to which reference is made import otherwise. Such jurisdiction does not exist because otherwise the creditors cannot reach the property, but because the remedy which the law affords is so partial and insufficient in its nature and character that complete justice can only be done by means of the equity jurisdiction.

[1] U. S. Comp. St. 1901, p. 583.

There is then nothing in this general principle of equity jurisprudence to help appellant, at least in and by itself. Indeed, the fundamental principle of jurisprudence that the power of taxation is legislative and cannot be exercised otherwise than under legislative authority negatives its application in such a case as we have here. That principle we understand to be one of universal application, admitting of no exception or qualification. The two principles in a case of this sort cannot, therefore, stand together. One or the other must give way.

The main ground relied on by appellant's counsel as entitling appellant to the relief sought—he states it as if it were the only ground—is that this is a case for the exercise by a court of equity of its jurisdiction to enforce liens. The exact amount due from the appellee has been ascertained or rendered ascertainable by the levy and assessment which has been made, its obligation to pay this amount is fixed, a lien to secure its payment exists by virtue of section 25 of the act on appellee's real estate in the county, the bill describes that real estate specifically and seeks to have it subjected to the payment of the tax as liens are enforced in equity, and the enforcement of liens is one of the heads of equity jurisdiction. In the exercise of such jurisdiction, therefore, it is argued appellant should have been granted the relief sought. He thus states it; the italics being his:

"The only question in the case is as to whether or not a court of equity has jurisdiction *to enforce a lien upon property* securing *a fixed obligation to pay a fixed sum of money* by decreeing a sale of the property for that purpose. We cannot see any other question in the case, and we cannot see how any but an affirmative answer can be given to the question."

We do not understand that there is involved in this position any claim that the Legislature intended by section 25 that the lien created by it should be enforced in this way. The position is that, irrespective of the question whether the Legislature so intended, appellant was entitled to so enforce it. It has created a lien; it has done that at least; equity has jurisdiction to enforce liens; the amount of the lien has been fixed by the levy and assessment—there is, therefore, no hindrance to equity exercising its jurisdiction in this particular, and it should exercise it and give the relief sought. Such we think is a fair statement of the position.

It is claimed that, in that this case presents this question, it differs from each one of the cases analyzed above, and is thereby taken from under them. It must be conceded that in this particular this case does differ from those cases. But in saying this we do not mean that in none of those cases was there a lien to secure the tax. This would not be true. For instance, in the Barkley Case, Mr. Justice Bradley said:

"Much reliance is placed by the counsel of the petitioner on the fact that the taxes described to be imposed by the acts of 1858 and 1859 were made a first lien and privilege upon the property liable thereto. We do not see how this can affect the present application. Liens for taxes are very generally created throughout this country; but it is never supposed that the public creditors to whom the money raised by the tax is to be paid have the benefit of such lien. It is created for the public authorities to enable them with greater certainty and facility to collect the taxes, without the embarrassment of other pretended claims against the property."

And in the Thompson Case the act authorizing the tax sought to be collected—which was an act of the Legislature of Kentucky—contained a provision like that which we have here, and counsel for the appellant, as appears from the synopsis of his brief in the Lawyer's Co-operative Publishing Company's edition of the Supreme Court reports, urged the existence of this lien on the Supreme Court as a reason why appellant should be adjudged entitled to the relief he sought. He said:

"The taxes here levied are by law a lien on the property against which they are assessed. They are made so by express provision of statute. It is the peculiar province of a court of equity to enforce liens where no other mode of enforcing them exists. We do not claim that such a lien exists until the levy is made. This distinguishes this case from Rees v. Watertown and Heine v. Levee Commissioners."

The particular wherein this case differs from those in the matter of lien is that there the suit was not to enforce the lien—in the Barkley Case it was for mandamus to the United States marshal directing him to levy and collect the tax from all the taxpayers, and in the Thompson Case it was for the appointment of a receiver to collect the tax from all the taxpayers—whereas, the suit here is against a single taxpayer, the real estate subject to the lien is specifically described in the bill, and the lien is sought to be enforced.

The position here taken involves that if it had occurred to the counsel for the judgment creditor in the Thompson Case to sue each of the taxpayers separately and to shape his bill as the one here has been shaped, which the facts warranted him in doing, the result in that case would have been different. He lost his case because he did not pursue the right course.

No authority exactly in point is relied on to uphold the position, but cases which are claimed to be analogous are cited to that effect. They are: Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Albrecht v. C. C. Foster Lumber Co., 126 Ind. 318, 26 N. E. 157; Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 493, 66 N. E. 395.

Each of these cases involved a statutory lien; the first two a mechanic's lien and the other a lawyer's lien. The statute in the first case provided for an action at law to enforce the lien, and the question was whether the federal court sitting in equity had a right to enforce it notwithstanding the remedy at law. It was held that it had. In the second case the question was whether the defendant was entitled to a trial by jury, and it was held that he was not. And in the last case the statute provided a remedy for the enforcement of the lien, and the question was whether the lien was enforceable in equity. It was held that it was. The ground of decision in all three of these cases was the same, to wit, that the enforcement of liens was an equitable proceeding. In the first case Mr. Justice Brewer said:

"The foreclosure of a mechanic's lien is essentially an equitable proceeding."

In the second case Judge Elliott said:

"A court of equity has jurisdiction to foreclose liens by decree of foreclosure. One of the maxims of equity jurisprudence is that 'equity acts spe-

cifically,' and, under this maxim, Courts of Chancery have assumed jurisdiction to foreclose liens upon real property."

And in the last case the court said:

"Actions to establish and enforce liens are among those most familiar to equity jurisprudence."

These cases, however, are not analogous to the one at hand. They did not have to reckon with the fundamental principle that the power of taxation is legislative and cannot be exercised otherwise than under legislative authority; whereas, this case does have to reckon therewith. No tax was involved there; whereas, a tax is involved here. This consideration removes these cases from our pathway. What then is the effect of this difference between this case and those we have analyzed as a matter of principle? Is it such as to take this case from under them? We think not. It is true that here the matter is presented in such a way that to grant the relief has less the appearance of in effect appointing a tax collector—as it were filling the vacancy in that office. But, whether or not such is its effect in reality, to take jurisdiction of it is certainly to exercise the power of taxation. Whenever a court takes jurisdiction of a suit against an individual taxpayer for his tax it exercises the power of taxation—it in that way undertakes to collect the tax—and it follows from our fundamental principle that it cannot rightfully do so unless the Legislature has authorized it. If the judgment creditor in the Thompson Case had been entitled to sue separately each one of the 30 taxpayers made defendants to his bill to enforce the lien on their real estate—which he was entitled to do if appellant's contention here is sound—it is strange that neither Mr. Justice Miller nor Mr. Justice Harlan in their opinions did not refer to the matter, and that it was not held that there was nothing fundamentally wrong in the judgment creditor's case, and that he had simply mistaken the course to be pursued to get his money. We fail to see anything in Mr. Justice Miller's statement in the course of his opinion as to how a court of equity enforces its decrees as contrasted with the mode in which a court of law enforces its judgment, quoted and emphasized by counsel, that indicates that he thought that the judgment creditor could properly have taken the course pursued here.

Then, if there is any virtue in this position, it is immaterial that the tax was uncollectible otherwise than by a suit in equity. Had there been a collector duly appointed, willing to perform his duty, and no hostility on the part of the taxpayers to its collection, yet, if it was due and unpaid, appellant would have had the right to sue each taxpayer in equity for the amount of the tax and subject his real estate to its payment. In the first of the three cases relied on as analogous to this case it was held that the federal court sitting in equity had jurisdiction to enforce the lien notwithstanding the fact that there was an adequate remedy at law. And in the last one it was held that a court of equity had jurisdiction to enforce the lien notwithstanding the statute provided another remedy which was available, but had not been pursued.

Appellant's counsel seems unwilling to go this length, for, though, in the quotation we have made from his brief, he makes no mention of

the fact of the uncollectibility of the tax otherwise than in equity as being essential to the validity of his position, in the course of his presentation thereof he lays stress thereon and seemingly thinks it is.

In considering this position we make no point of the fact that it is the judgment creditor of the Caseyville district, and not that district or its collecting officer, that is asserting the right to enforce the lien. That consideration will be alluded to in connection with the other ground upon which appellant's counsel maintains that appellant was entitled to the relief sought.

That ground is that legislative authority for the suit is to be found in section 25. In view of counsel's reference to the other ground relied on, which we have just considered, as representing the sole question in the case, it is not entirely certain that he claims that legislative authority for the suit is to be found there. But in view of the extended consideration he has given to the Kentucky authorities bearing on the question of the right to sue a taxpayer for his taxes and the great reliance placed on the last one as having bearing on this case, we will take it for granted that it is so claimed. At any rate, the matter should be dealt with so as to cover the case completely.

The question then is whether the Legislature by that section authorized a suit against the taxpayer for the collection of the tax, and that by a holder of the bonds authorized to be issued by the act either before or after a judgment had been obtained for the amount thereof and the return of an execution thereon unsatisfied. It is not sufficient that this section authorized a suit to be brought to collect the tax. It is essential that it be held also that it authorized a suit by such a holder as here. This is so because here again comes in our fundamental principle to regulate matters and say what can be done. If the power of taxation is legislative, then it can be exercised by the judiciary so far as and no farther than the Legislature says. It is not for the judiciary to make up for any deficiency in the legislation; otherwise it cannot be said that the power of taxation is legislative. The cases in Kentucky dealing with the right to sue for taxes are quite numerous. They are as follows, to wit: Portland Dry Dock & Ins. Co. v. Trustees of Portland, 12 B. Mon. 77; Johnston v. City of Louisville, 11 Bush, 527; McLean County Precinct v. Deposit Bank, 81 Ky. 254; Louisville Water Co. v. Hamilton, 81 Ky. 523; Greer v. City of Covington, 83 Ky. 410, 2 S. W. 323; Baldwin v. Hewitt, Auditor, 88 Ky. 680, 11 S. W. 803; Louisville Water Co. v. Com. of Kentucky, 89 Ky. 248, 12 S. W. 300, 6 L. R. A. 69; Clark v. Louisville Water Co., 90 Ky. 524, 14 S. W. 502; Louisville Trust Co. v. Muhlenberg Co., 23 S. W. 674, 15 Ky. Law Rep. 397; Grand Rapids School Furniture Co. v. Trustees District No. 29, Pike County, 102 Ky. 556, 44 S. W. 98; City of Covington v. District of Highlands, 113 Ky. 612, 68 S. W. 669; City of Lexington v. Wilson, 118 Ky. 221, 80 S. W. 811.

We will refer to these cases by the name of the plaintiff in the lower court, and we will omit all reference to the Louisville Trust Company Case until we have disposed of all the rest. It is the City of Lexington Case, the last of the series, upon which so much reliance is placed. The cases are not in entire harmony. But it was not until the District of Highlands Case followed by the City of Lexington Case

that discord arose. The cases in which it was held that suit was unmaintainable are the following, to wit: Trustees of Portland, City of Covington, District of Highlands, and City of Lexington Cases, four in all. They will be considered in detail later. The cases in which it was held that the suit was not maintainable were the City of Louisville, Deposit Bank, Hewitt Auditor, Commonwealth of Kentucky, the Grand Rapids School Furniture Company, five in all. In none of these cases was there legislation authorizing the bringing of a suit for the tax involved. The City of Louisville, Hewitt Auditor, and the Commonwealth of Kentucky Cases were each one a suit against an individual taxpayer to recover the amount of his tax. And it was a suit by or on behalf of the political legal entity to whom the tax was due. The first two were at law, and a personal judgment was sought. The last one was in equity, and the relief sought was the appointment of a receiver to collect sufficient money to pay the tax from the resources of the defendant and pay same to the plaintiff. The usual summary remedy for the collection of the tax existed in each case. In the City of Louisville Case there was no question as to its adequacy to yield the tax. The tax was otherwise collectible than by suit. In the other two cases the tax was not otherwise collectible. In the Hewitt Auditor Case this was so because it was a suit against a personal representative of a decedent who had disbursed the entire estate in his hands. In the Commonwealth of Kentucky Case this was so because the defendant was a public service corporation, to wit, a water company, and its assets were not subject to seizure and sale. The Deposit Bank and Grand Rapids School Furniture Company Cases were, neither one, a suit against an individual taxpayer. Each sought the collection of the tax from all the taxpayers, and it sought to collect them in equity through the appointment of a receiver. In neither one of them was the suit by or on behalf of the political legal entity to whom the tax was due. In each case the tax had been duly levied, the same as here, and the suit was by the creditor of that entity for whose benefit it was levied and who would be entitled to it when collected. In the Deposit Bank Case no judgment had been obtained for the debt; in the School Furniture Company Case one had been obtained. The tax was not otherwise collectible than by the suit brought to collect it. This was so in each instance because no one would accept the appointment of tax collector, no doubt for the purpose of evading the payment of the tax. Each case was, therefore, substantially similar to the Supreme Court case of Thompson v. Allen County, above considered; the only difference being that in the Deposit Bank Case no judgment had been obtained for the debt. But this was not a material difference, and that case was cited by the Supreme Court in the Thompson Case as justifying its position.

In the Hamilton and Clark Cases the question was not really involved whether suit could be brought for the tax in question therein. Neither was a suit against a taxpayer. Each was a suit by a taxpayer against a representative of the political legal entity to whom the tax was due. The taxpayer was a public service corporation, to wit, the Louisville Water Company, defendant in the Commonwealth of Kentucky Case. Its assets were not subject to seizure and sale, and the

suit was brought to enjoin the personal representative from seizing and selling any of its assets to pay the tax. The validity of the tax was questioned. It was held that the plaintiff was entitled to the relief sought, but on condition that it first deposit the amount of the tax in court; if it did not do so, it would be left to its legal remedies. This was in accordance with a well-recognized principle of granting injunctive relief in such cases. German National Bank v. Kimball, 103 U. S. 732, 26 L. Ed. 469; Albuquerque Nat. Bank v. Perea, 147 U. S. 87, 13 Sup. Ct. 194, 37 L. Ed. 91; People's Nat. Bank v. Marye, 191 U. S. 272, 24 Sup. Ct. 68, 48 L. Ed. 180.

The court perhaps went farther than it had a right to do or there was any necessity of doing in saying that if the tax was not so deposited the chancellor should place the management of the corporation in the hands of a receiver to collect the tax. These cases are not an authority for the position that suit might have been brought on behalf of the political legal entity to whom the tax was due against the taxpayer for the collection of the tax, and there is not the slightest conflict between them and the Commonwealth of Kentucky Case, in which it was distinctly held that no such suit could be brought.

This takes us back to the four cases in which it was held that a suit was maintainable. Each case was a suit against an individual taxpayer, and it was brought by the political legal entity to whom the same was due. In the City of Covington Case there was express legislation authorizing the bringing of the suit. In neither one of the other three was there any such legislation. In the Trustees of Portland Case the Legislature had imposed a specific tax on an insurance company in favor of the trustees, and the suit was brought to recover the tax so imposed. Judge Marshall said:

"It is objected that the action of debt cannot be maintained for the demand disclosed in the declaration, but that, if the plaintiffs are entitled to it at all, they should collect it as they do their ordinary taxes. But as the sum is certain and due by statute, and as debt is the ordinary remedy upon statutes, we do not perceive why, if the defendants are certainly bound to pay the tax to the plaintiffs, the action of debt may not be maintained, even if they might resort to a more summary mode of coercion. If a statute prohibit an injury under a certain penalty to the party injured, he may sue for it in debt, though neither the right nor the form of the action be expressly recognized in the statutes. 1 Chitty's Pleadings. Much more, if the Legislature may require payment of a certain sum by one person to another, should the person entitled to it be allowed to maintain an action of debt against the party who being bound to pay it actually owes it. If the statute creating the liability had presented a different remedy, the case might be different. But the mere fact that the statute creating this liability calls it a tax does not in our opinion preclude the remedy by action."

It is plain from this that the statute imposing the tax prescribed no remedy for its collection, for he said that if it had done so the "case might be different." He did say, however, in response to the suggestion that the tax should be collected as ordinary taxes were collected, that the action was maintainable notwithstanding that it might be so collected. The decision in this case is in no way in conflict with any of the cases in which it was afterward held that a suit was not maintainable. The District of Highlands Case was a suit against a public service corporation, to wit, the city of Covington

which owned and operated its own waterworks, to recover tax due from property owned by it in the district of Highlands, a political legal entity. It thus presented the identical question decided in the Commonwealth of Kentucky Case, and, had the decision in that case been followed, it should have been held that the suit was not maintainable. But upon the erroneous notion that the decisions in the Hamilton and Clark Cases in holding that, before an injunction would be granted at the instance of a public service corporation restraining the seizure and sale of its assets to pay a tax which it claimed to be invalid, a deposit of the amount of the tax should first be made, were inconsistent with the decision in the Commonwealth of Kentucky Case, it was held that the suit was maintainable. Thus for the first time discord arose.

The City of Lexington Case was a suit by that entity to recover an occupation tax imposed on a livery stable keeper by an ordinance thereof. No remedy was provided for its collection The case was more like the Trustees of Portland Case than any of the previous ones that preceded it and was perhaps governed by it. We see no reason to question its soundness. In the opinion therein practically all the previous cases were reviewed. The decisions in the Hewitt Auditor and Commonwealth of Kentucky Cases were disapproved, and that in the District of Highlands Case approved. No disapproval was expressed of the decisions in the City of Louisville and City of Covington Cases. The decisions in the Deposit Bank and Grand Rapids Furniture School Company Cases were expressly approved; but their holding was placed on too narrow a ground, to wit, that what the court of equity was asked to do in those cases was to fill the vacancy in the office of tax collector. It may be that that was in reality what was asked to be done. But the decisions should be placed on the broader ground—as they are placed by the opinions therein—that what was asked of the court of equity therein was the exercise of power of taxation and there was no legislation authorizing it.

Now we fail to find anything in any of these four cases, in which it has been held that a suit was maintainable, upholding the suit herein. The City of Lexington Case, which is most relied on, certainly does not. The decision therein is simply that where a tax is imposed, and no remedy whatever is provided for its collection, it may be collected by suit on the ground that the Legislature must have intended that it should be collected in some way. It recognizes our fundamental principle and upholds the suit because there is legislative action authorizing it. The opinion, however, goes farther than the point actually necessary for decision, and, in so doing, it finds support in the District of Highlands Case that, though a remedy may be provided, yet, if in its nature or character the remedy provided is inadequate to the collection of the tax, there too, as well as where no remedy at all is provided, an intention on the part of the Legislature that it may be collected by suit will be inferred, and a suit to collect it will be upheld because there is legislation authorizing it. But we do not think it is to be gathered from the point decided or anything said in the opinion that it will be inferred that the Legislature intended that if the tax

183 F.—2

could not be collected by reason of the fact that no one can be found to act as tax collector, or if one can be found the taxpayers will not let him collect it, it may be collected by suit. To the contrary of this, it seems to us, it is said in the opinion as follows:

"The court also recognizes the rule of this court to be that, when the Legislature has prescribed a full and adequate remedy for the collection of taxes, the authority to resort to any other remedy for their collection is denied."

There is no room to claim that by full and adequate remedy was meant other than that the remedy should be full and adequate to meet the situation as it may exist otherwise than where no one will act as collector or the taxpayers will not allow him to collect the taxes. The Legislature should not be held to have contemplated such a situation. It would certainly be farfetched to hold that it did so contemplate, and that at a time when almost every one was in favor of railroads and willing to go down in their own pockets to help build them.

But, however all this may be, there is not the slightest warrant in the Trustees of Portland, District of Highlands, and City of Lexington Cases, or either of them, for the bringing of a suit by the judgment creditor of the political legal entity in whose favor the tax may be imposed. They were all suits by the political legal entity itself, and it is somewhat significant that the only two cases considered above wherein the suit was brought by the creditor and not by the political legal entity and held not maintainable were set aside to themselves and expressly approved in the City of Lexington Case.

This leaves for consideration the Louisville Trust Company Case, which we have left for consideration by itself. We have done this because it is so similar to the case in hand. In that case bonds had been issued in compromise of former bonds, and the suit was to collect the tax imposed for their payment. The act under which the original bonds were issued contained a provision exactly similar to the one in the act here. The act under which the compromise bonds were issued contained a provision as to lien also, in somewhat different phraseology. It provided that "said county shall have a lien," etc. The bonds do not seem to have been reduced to judgment. The tax was not otherwise collectible than by that suit because no one would act as collector. The suit was by the holder of the bonds against the entity and a number of the property owners thereof seeking to enforce the tax liens. The case differs from the case here in that the provisions as to the lien in the act under which the compromise bonds were issued said that "said county shall have a lien"; whereas, the act here did not in so many words say who should have the lien. The suit there was against more than one taxpayer; whereas, here it was against a single taxpayer. And it does not appear that the property of the taxpayers sought to be sold was specifically described in the bill; whereas, here it is. We do not see sufficient in these differences to lead to a difference in decision. It was held that the suit was not maintainable. Judge Hazelrigg said, referring to the two lien provisions:

"It will be observed that the language of these provisions is substantially the same as that employed in the General Statutes of the state creating similar

tax liens, so that there was no intention to give the county any other lien than that which existed prior to the passage of these acts, or to afford any additional or extraordinary remedy for the enforcement of such lien. These liens cannot be enforced in equity; courts cannot be transformed into tax collectors."

We are unable, therefore, to find anything in the decisions of the Court of Appeals of Kentucky upholding the position that the Legislature intended that the lien created by section 25 should be enforceable by suit, much less that it should be enforceable by the holder of the bonds authorized to be issued by the act. On the contrary, we think that those decisions are conclusively against this position.

Is it to be said then that we have a case here of a wrong without a remedy? No. It is not a case of a wrong without a remedy. It is a case of a wrong without a judicial remedy. It is a case of a wrong where there is a remedy, but that remedy is legislative, not judicial. It is important that the position should be maintained that every wrong should have a remedy, but it is equally important that it should be maintained that wrongs should be remedied in the right way and not in a wrong way.

The decree of the lower court is affirmed.