### BARKLEY *v.* LEVEE COMMISSIONERS ET AL.

1. A public corporation, charged with specific duties, such as building and repairing levees within a certain district, being superseded in its functions by a law dividing the district, and creating a new corporation for one portion, and placing the other under charge of the local authorities, ceases to exist except so far as its existence is expressly continued for special objects, such as settling up its indebtedness, and the like.

2. If, with such limited existence, no provision is made for the continuance or new election of the officers of such corporation, the functions of the existing officers will cease when their respective terms expire, and the corporation will be *de facto* extinct.

3. In such case, if there be a judgment against the corporation, *mandamus* will not lie to enforce the assessment of taxes for its payment, there being no officers to whom the writ can be directed.

4. The court cannot, by *mandamus*, compel the new corporations to perform the duties of the extinct corporation in the levy of taxes for the payment of its debts, especially where their territorial jurisdiction is not the same, and the law has not authorized them to make such levy.

5. Nor can the court order the marshal to levy taxes in such a case ; nor in any case, except where a specific law authorizes such a proceeding.

6. Under these circumstances, the judgment creditor is, in fact, without remedy, and can only apply to the legislature for relief.

ERROR to the Circuit Court of the United States for the District of Louisiana.

Argued by *Mr. E. T. Merrick* for the plaintiff in error, and by *Mr. C. L. Walker* for the defendants in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an application by Barkley to the court below for a *mandamus,* to be directed to the Board of Levee Commissioners of the parishes of Madison and Carroll, in the State of Louisiana, to compel such of said board as then survived to proceed to assess and collect a tax for the payment of a certain judgment alleged to have been recovered by the petitioner against the

said board on the nineteenth day of June, 1872 ; or, if the court should be of opinion that the survivors have not such power, and cannot fill vacancies in their body, then that the police juries of said parishes of Madison and Carroll should perform that duty, and assess and collect sufficient tax to pay said judgment; or, if the court should be of opinion that it had not power to make either of said orders, then that it should order the United States marshal of the district to assess at once, or by instalments, from year to year, and collect sufficient taxes upon the property subject to taxation for levee purposes in said parishes, to pay said judgment debt, interest, and costs ; and for general relief.

The petition, amongst other things, states that the suit in which the judgment sought to be enforced was rendered, was originally commenced on the 23d of August, 1867, in the District Court of the Thirteenth District of Louisiana, against the Board of Levee Commissioners of the parishes of Carroll and Madison, for money due on levee warrants or scrip, being evidences of debt for work and labor done upon the levees in the said parishes, for the payment of which the laws of Louisiana had provided the assessment and collection of taxes, and liens and privileges upon all taxable property in said parishes; that this suit was afterwards removed by the plaintiff (who was a citizen of Tennessee) into the Circuit Court of the United States, and the police juries of said parishes were made parties thereto ; that judgment was entered against the Board of Levee Commissioners on the date before mentioned for over $100,000 ; that the said board, after having acted under prior statutes, was created a corporation by act of the legislature March 10, 1859 ; that in March, 1861, each of said parishes was made a separate levee district, but the power to assess and collect taxes to meet their indebtedness was continued in the old board; that, when the suit was commenced, William Sutton, president of the board, Samuel P. Chambloss, commissioner for Carroll, and the three commissioners for Madison, were living, but that Sutton and Chambloss have since died, and no vacancies have been filled by election or otherwise.   The petition further states, that a writ of *fieri facias* has been issued on the judgment and returned unsatisfied, after demand made on the secretary and treasurer

of the board, they, as well as the police juries of the parishes, pretending that the board was dissolved, and failing to point out, any property belonging thereto. The petitioner further contends, that the two parishes are the really interested parties, and that, if the old Board of Levee Commissioners cannot act, it is the duty of the police juries to assess and collect sufficient taxes on the taxable property of the two parishes to pay the judgment.

A rule was taken on the surviving members of the Board of Levee Commissioners and on the police juries of the parishes of Madison and Carroll, to show cause why a *mandamus* should not issue as prayed.

The former, by exception and answer, set up various grounds of defence, the most important to note being that the corporation of levee commissioners was defunct by resignation and death, only three (who were not a quorum) remaining alive ; also, that the judgment was void because no service of process had ever been made on the corporation.

The police juries answered that they were distinct corporations from that of the Board of Levee Commissioners, and were not vested with power to assess and collect the taxes in question.

After receiving evidence and hearing the parties, the court below refused the *mandamus.* Barkley sued out this writ of error.

We had occasion in the case of *The Police Jury* v. *Britton*, 15 Wall. 566, to explain the system of making and maintaining the levees in Louisiana, which formerly prevailed; which was, that the riparian proprietors were obliged to keep them up as one of the considerations on which they held their lands. This duty was executed under regulations made by the police juries of the several parishes (which are the administrative officers thereof), and under the direction of inspectors by them appointed. In some instances, by virtue of special statutes, the levees were managed by the parish itself, or by a district composed of several parishes, through proper officers appointed by the police juries, or otherwise, and the necessary expenses were raised by means of a tax levied upon the inhabitants. In 1852 the parishes of Carroll, Madison, and Catahoula (Catahoula, however, being soon after excluded) were constituted one levee district, which,

in the following year, was limited to the alluvial lands in those parishes (Laws of 1852, p. 234; Laws of 1853, p. 44); and a tax was directed to be levied for the support of the levees within the district, the amount and mode of assessing which was from time to time changed. This tax was directed to be collected annually by the sheriffs of the respective parishes, or by collectors to be appointed by the commissioners. To carry out the act, three commissioners were appointed from each parish, and were styled the "Board of Levee Commissioners," with power to fill vacancies in the board, appoint officers, lay out the district into wards, with one inspector to each ward, and order the levees to be repaired and built. In 1853 these commissioners were made elective, three to be elected biennially in each parish by the qualified voters thereof residing in the district or cultivating any portion of the alluvial lands therein. In 1859 the board were authorized to divide each parish into three equal portions, each of which was authorized to elect one commissioner.

The warrants on which the judgment in question was founded were issued in 1859 and 1860; and the legal provisions then in force with regard to assessing taxes for supporting the levees and paying the general liabilities of the board are to be found in the act of March 18, 1858, as amended by the act of March 12, 1859. Laws of 1858, p. 128; Laws of 1859, p. 30. By these acts it was provided that, for the purpose of making and repairing levees in the district, the commissioners should be authorized to assess annually a specific tax of ten cents on each and every acre of alluvial lands situated between the base of the hills west of Bayou Maçon and the levees on the Mississippi River, in the parish of Carroll, and between the levees and the western boundary, in the parish of Madison, including such alluvial lands only as had theretofore been held to be within said levee district; and the commissioners were further authorized to assess an annual *ad valorem* tax, at such a per cent on the State tax, including the mill tax, on *all* property assessed in said levee district (lands included), as might be necessary to build and repair the levees, or to meet and take up any or all outstanding liabilities of the said board, on account of levees theretofore erected or repaired. It would seem from

these enactments, that the specific tax of ten cents on each acre was intended for current expenses of levees, and that the *ad valorem* tax was intended to meet any deficiency and to pay prior obligations incurred.   These taxes were declared to be a first lien and privilege upon the property subject thereto ; and, on return by the sheriff or collector that it had been demanded and not paid, the district judge might grant an order of seizure and sale.

Thus stood matters in 1860.   But by acts passed in March, 1861 (Laws of 1861, pp. 96, 110, 118), the levee district of the parishes of Madison and Carroll was abolished by the creation of two new separate districts composed of the said parishes respectively ; and since that time no election of members of the old board has ever been held, the term of office of the then existing members having expired in 1862 ; and the board has been *functus officio,* and has for over fifteen years past ceased to have any duties to perform, or any existence whatever, except for the purpose of discharging its old indebtedness.   By the death of the president, and the other members from Carroll, only three members survive, and these were all elected from the parish of Madison.   In 1866, at the close of the war, an entirely new system, uniform throughout the State, was adopted, by putting all the levees under the charge of a single board, called the Board of Levee Commissioners (Laws of 1866, pp. 34, 36), and afterwards under the Board of Public Works of the State (Digest of Statutes of La., vol. ii., p. 398, tit. Public Works) ; and this board has been finally superseded by a private corporation, called the Louisiana Levee Company, which performs the work by contract with the State.

The question is, whether, as matters now stand, a *mandamus* can be issued to compel the surviving commissioners of the old board, or the police juries of the parishes of Madison and Carroll, to assess a tax on the property in the former levee district of said parishes, to pay the judgments in question ; or, if not, whether the Circuit Court of the United States can direct the marshal to assess such tax.

In our judgment, neither of these things can be done.

In the first place, we think that the corporation of the Board of Levee Commissioners of the parishes of Madison and Carroll

is no longer in existence as a matter of fact. It is true, that the acts of 1861, abrogating the district, and creating two separate districts, one for each parish, did not in terms abolish the old corporation, but reserved to it the power to levy taxes in order to meet its outstanding indebtedness. But the creation of the new districts, providing (as was done) for the election of new and separate commissioners in the parish of Carroll, the placing of the levees in the parish of Madison under the charge of the police jury, and substituting an entire new system of levee management in the parishes, superseded all the functions of the old board and all provisions for their continuance by election, except so far as may have been saved by express reservation. Nothing, however, was thus saved, except their power to assess taxes to meet their outstanding indebtedness. And, in fact, no elections for members of the board have ever been held since that time. The term of office of the commis-sioners expired in November, 1862, and no provision was made in the laws constituting the board, that the members should hold over until the election of their successors. It is true, a general act had been passed in 1856, declaring that all State and parish officers should, after the expiration of their term of service, continue to perform the duties of their office until their successors should be inducted into office. But the members of this board were neither State nor parish officers, and the laws for electing others in their stead had ceased to have operation. And although, in ordinary cases, where an election has been omitted, officers may continue to act as officers *de facto* beyond their regular term (though not compellable to do so), and their acts will bind the corporation which they represent; yet, where, as in this case, no further provision is made for any further election, and the functions of the corporation have been abrogated or superseded, we do not think that any implied power to continue in office beyond the prescribed period exists. Our attention, however, is called to the act passed by the provisional legislature in 1867 (Laws 1867, pp. 264–272), by which the corporation is assumed to be in existence, and is authorized to make and issue certain bonds; and for that purpose it is declared (sect. 10), that "the Board of Levee Commissioners shall continue in office, with the power of filling vacancies in

said board, until their successors shall be duly elected and qualified according to law; and all powers granted to said Board of Levee Commissioners by any of the acts aforesaid, or by any other acts, shall and may be exercised by the members of the board now in office and any members appointed or elected as above described." This provision is evidently based upon a false suggestion. It supposes that "successors" could be "elected and qualified," when there was no law then in existence for any such purpose. A different system was in operation, and had taken the place of that which provided for the election of these commissioners. The act also declares that the Board of Levee Commissioners shall continue in office; taking for granted that they were in office, when, in fact, as we have seen, they were not. Furthermore, this act was one of the acts expressly excepted from the operation of the one hundred and forty-ninth article of the constitution of 1868, which validated all laws passed since the ordinance of secession in 1861. This express exception is undoubtedly equivalent to a repeal of the act.

Our conclusion from the whole case, therefore, is, that the corporation in question no longer exists, and that no *mandamus* can be issued to it or to the surviving persons who were formerly members of the board.

The prayer for a *mandamus* against the police juries of the parishes of Madison and Carroll clearly cannot be granted. Those bodies never had any power to assess the levee tax in question. There is no law authorizing them to do so. They do not act in concert, which they would have to do, in order to assess a uniform tax on the whole district; and there is no privity of duty, interest, or succession between them and the extinct board.

The remaining prayer, for an order directing the marshal to assess the tax, is equally inadmissible. It is true, that, in the case of *The Supervisors of Lee County* v. *Rogers*, 7 Wall. 175, we held that the Circuit Court acting in that case, after having issued a *mandamus* to the supervisors of the county, commanding them to levy a tax, and they having refused to obey the writ, was authorized, under the Code of Iowa, which provided for such a proceeding, to issue a writ to the marshal commanding

him to levy and collect the taxes required.  But we have never gone beyond this case, which depended on the special law referred to.  The marshal is the executive officer of the court, and can only execute its process; and the court, without some such special authority as that contained in the Iowa Code, cannot enforce its judgments for the recovery of a debt in any other way than by seizing and selling the property of the judgment debtor, or (where imprisonment for debt is authorized) by seizing and detaining his person.  Where the debtor is a corporation, it cannot seize the property of its members.  This it would do if it should issue a writ to the marshal commanding him to levy a tax upon the inhabitants of a municipal corporation, or upon their private property.  The court has no more authority, in point of law, to seize the property of citizens for the debt of the corporation in which they reside (except in some of the Eastern States, where a different system prevails) than it has to seize the property of another corporation.  Its power to issue a *mandamus* to compel municipal officers to perform their duty of levying a tax is a distinct power, which extends to all ministerial acts which officers are legally bound and refuse to perform.  In the recent case of *Rees* v. *The City of Watertown*, 19 Wall. 107, we decided that the court has no general power to commission the marshal to levy taxes for the purpose of satisfying a judgment, and we refer to that case for a more full explanation of our views on this subject.

Much reliance is placed by the counsel of the petitioner on the fact that the taxes directed to be imposed by the acts of 1858 and 1859 were made a first lien and privilege upon the property liable thereto.  We do not see how this can affect the present application.  Liens for taxes are very generally created throughout the country; but it is never supposed that the public creditors, to whom the money raised by tax is to be paid, have the benefit of such lien.  It is created for the benefit of the public authorities, to enable them with greater certainty and facility to collect the taxes, without the embarrassment of other pretended claims against the property taxed.

The truth is, that a party situated like the present petitioner is forced to rely on the public faith of the legislature to supply him a proper remedy.  The ordinary means of legal redress

have failed by the lapse of time and the operation of unavoidable contingencies. It is to be presumed that the legislature will do what is equitable and just; and in this case legislative action seems to be absolutely requisite.

*Judgment affirmed.*