FOREST OIL CO. v. CRAWFORD.

(Circuit Court of Appeals, Third Circuit. May 21, 1900.)

No. 32.

1. FEDERAL COURTS—JURISDICTION—INTERVENTION.

In a suit in equity in a federal court by one who has established his title in an action at law to an undivided interest in a tract of land, brought in his own behalf alone to recover his share of the value of oil alleged to have been unlawfully taken from the land by defendant, where the only ground of federal jurisdiction is diversity of citizenship, tenants in common with complainant, who are citizens of the same state as defendant, are not entitled to intervene as complainants for the recovery of their shares of such profits made by defendant on the ground that there is a fund in court in which they are interested; nor are they given the right to intervene for such purpose by the fact that a receiver has been appointed, on application of the complainant, to take charge of and operate oil wells on the land pending the suit.

2. SAME.

Where the complainant in such suit voluntarily assents to the unauthorized intervention of his co-tenants, and to the rendition of a joint judgment in favor of himself and such interveners, he cannot be relieved from the consequences of such association, and the entire suit fails for want of jurisdiction.

3. EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW—SUIT TO RECOVER MESNE PROFITS.

In the absence of allegation and proof that the defendant is causing or threatening injury to the property, a successful plaintiff in ejectment cannot maintain a suit in equity for the recovery of mesne profits; the remedy at law being adequate.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

J. McF. Carpenter, for appellant.

J. H. Beal, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge. This is an appeal from a final decree of a circuit court sitting in equity, which was made on February 2, 1900. The only parties to the bill, which was filed on January 2, 1897, were Oliver P. Crawford, "a citizen of the state of Nevada," plaintiff, and the Forest Oil Company, "a corporation organized and existing under the laws of the state of Pennsylvania," defendant. It suggested no ground of jurisdiction in the circuit court, other than the diverse citizenship of the parties, and, without pausing to consider whether that fact (of which there is no question) was sufficiently pleaded, we may assume that it was. We have, then, a suit which originated in a bill filed by a citizen of one state against a citizen of another state, and respecting which the jurisdiction of the court was dependent solely upon this diversity of citizenship. After answer and replication, and the appointment of an examiner, viz. on April 27, 1897, the petition of several persons was presented, wherein it was prayed that the court would permit them to intervene in and become parties to the suit, and to appear therein as plaintiffs, in the same manner and with the like effect as if they had been named in the original bill,

101 F.—54

and that upon the hearing there should be granted to them such relief as might be just, equitable, and proper. Thereafter two additional like petitions were presented by other petitioners. The filing of these petitions was allowed, but before any action was taken upon them, viz. on July 30, 1897, a receiver was appointed to take charge of, and operate for oil and gas purposes, the farm described in the bill. The original plaintiff never interposed any objection to the intervention petitions, and, so far as appears, he seems to have been content that the petitioners should all be joined with him as parties plaintiff; but on January 17, 1898, the defendant, the Forest Oil Company, answering these petitions, set up that several of the petitioners were residents of the state of Pennsylvania, and therefore had not the requisite citizenship to give the circuit court jurisdiction, and, as to others of them, that they were unknown to the defendant, and proof of their citizenship was demanded. This answer also alleged that five of the petitioners had, at the time their petition was filed, each brought a separate action of ejectment against the defendant for the recovery of an undivided one-thirteenth part of the land to which the controversy related, but that, although judgment had since been entered against the defendant in each of the said actions, no writ of habere facias possessionem had been issued on said judgments, nor had the plaintiffs in said actions in any other way obtained possession of the premises, or any part thereof, against the defendant. It further alleged that none of the petitioners were in possession of the land, and that the defendant was in possession thereof, except the one-thirteenth part thereof, which was in the possession of Oliver P. Crawford, the plaintiff named in the bill, by virtue of a writ of habere facias possessionem; and it further averred that the petitioners had a complete and adequate remedy at law, and that their purpose in seeking to be joined as plaintiffs was to recover from the defendant certain mesne profits to which they claimed they were entitled, but for recovery of which, the defendant was advised, the bill could not be maintained. After hearing upon these petitions and this answer, it was on March 12, 1898, ordered:

"That the said petitioners, and each of them, have leave, and leave is hereby granted to them, to interpose in this suit for their own interests and for the interests of those whom they represent, and to that end to appear in the suit in the same manner and with like effect as if they were named in the original bill as plaintiffs having, or claiming to have, an interest in the matter therein in controversy; this order to be without prejudice to the proceedings already had."

In making this order the court below said:

"A court having assumed jurisdiction, we are of opinion that the citizenship of parties interested in the subject-matter and seeking to intervene is not material. Osborne v. Barge (C. C.) 30 Fed. 806, and cases cited therein. Waiving for present purposes the question of the prior determination of their title being necessary, it is clear that all these petitioners have an interest in the fund in the possession of the court, and which forms part of the subject-matter of the bill. Their right to intervene, therefore, cannot be denied them. Moreover, Eliza Erskine, William Crawford, Nancy Reed, Matthew A. Crawford, and Mary A. Davis have established title to the real estate. The rule to intervene granted January 7, 1898, is made absolute."

We are unable to concur in this statement, or to sustain the order which was made in pursuance of it. We cannot agree that there was a fund in the possession of the court in which the petitioners had an interest, and which gave them a right to appear in the suit in the same manner and with like effect as if they had been named in the original bill as plaintiffs. The original bill had not been, and did not in any manner purport to have been, filed on their behalf. It contained nothing to suggest that they, or any of them, might become parties to it. It was in no sense a class bill, but was exclusively the bill of the plaintiff named. It prayed, it is true, that a receiver might be appointed to take charge of certain oil wells, and the oil produced therefrom, and also that an account should be taken of the value of the oil which it was alleged had been unlawfully taken by the defendant, and of the damage done by the defendant to the property; but nothing whatever was suggested with respect to the disposition to be ultimately made of the property passing into the hands of the receiver, or of the proceeds thereof, and, as to the accounting, what was asked for was that the defendant should be required to pay over to the complainant the amount found to be due to him,—not that there should be an accounting and distribution with and among all parties who might claim and be adjudged to be entitled. Waiving the question as to whether the receivership was rightfully instituted, we turn to the final decree of February 3, 1900, which confirmed the report of a master who had been appointed on April 28, 1898, to state an account in accordance with the interlocutory decree then made, which adjudged:

"That the plaintiff, Oliver P. Crawford, and the interveners are entitled to an accounting from the said defendant, the Forest Oil Company, for the value of the oil heretofore taken from the said farm by the Forest Oil Company, down to the date of the appointment of the receiver in this case, and also for the damage, if any, done to the said farm by the said defendant during the time of its occupation thereof, for the purposes of operating for and producing oil therefrom."

Now, the report of the master upon which the decree appealed from was based did not state nor in any manner deal with a receiver's account, but purported to exhibit (as the order appointing the master had directed) "an accounting from the said defendant" (the Forest Oil Company itself) to Oliver P. Crawford and the interveners; and by the account reported it was made to appear that there was due by that company to them, and for distribution among them, the aggregate sum of $39,372.27. Upon the coming in of this report the decree under review was made. The report was in all things confirmed, and the Forest Oil Company, defendant, was ordered to pay to the plaintiff and to the interveners the said sum of $39,372.27, in conformity with a schedule of distribution which the master had prepared. Thus it appears that the interveners were awarded, not an interest in any fund which was in the possession of the court, but a money decree against the defendant. There was no fund, and consequently the assumed foundation of the supposed right of intervention did not exist, and the theory upon which it had been allowed, and upon which alone the final decree in favor of the interveners

could possibly have been warranted, was unsupported in point of fact.

We need not further discuss the case of the interveners, and that of the original plaintiff may be briefly disposed of. We cannot shut our eyes to the quite apparent fact that he voluntarily assented to the irregular proceedings by which his bill, even if otherwise maintainable, was made fatally defective by the misjoinder therein of others as his co-plaintiffs. He seems to have been entirely satisfied to have the interposing parties united with himself, to assert with them a joint claim, and to recover with them a joint judgment; and he should not, we think, be now relieved from the consequences of this association. Railroad Co. v. Bell (Sup. Ct.; Feb. 26, 1900; not yet officially reported) 20 Sup. Ct. 399, Adv. S. U. S. 399, 44 L. Ed. ——. But, apart from this, and in view of the report of the master, as confirmed by the court, that there was not sufficient evidence to support a finding that the defendant improperly or negligently operated the property, and also that the farm in question appeared to be reasonably protected from being drained of its oil through wells from adjoining property, we are of opinion that, even as to the original plaintiff, there was no ground for maintaining the bill, inasmuch as, but for its allegations that such injuries to the property were occurring or threatened, it was simply a bill (as was the decree) for the recovery of mesne profits, and for the recovery of mesne profits the remedy at law is adequate.

It is not necessary to further consider the errors alleged, nor to refer to the several specifications with particularity. From what has been said it results that the decree of the circuit court must be reversed, and the case be remanded to that court, with direction to dismiss the bill, with costs to the defendant below, and against all the parties plaintiff, including the interveners; and it is so ordered.