**JOHNSON et al. v. RIVERLAND LEVEE DIST. et al.**

No. 11797.

Circuit Court of Appeals, Eighth Circuit.

Feb. 14, 1941.

Rehearing Denied March 12, 1941.

712

Staunton E. Boudreau, of St. Louis, Mo. (Leigh M. Kagy, of East St. Louis, Ill., Ezra T. Fuller, and Mahan & Fuller, all of Hannibal, Mo., Baker, Lesemann, Kagy & Wagner, of East St. Louis, Ill., and Mr. Thomas J. Noonan, of St. Louis, Mo., on the brief), for appellants.

Charles E. Rendlen, of Hannibal, Mo. (F. D. Wilkins, of Louisiana, Mo., and Rendlen, White & Rendlen, of Hannibal, Mo., on the brief), for appellees Riverland Levee Dist. and others.

Harry Carstarphen, of Hannibal, Mo. (E. H. Henning, of Monmouth, Ill., on the brief), for appellee Illinois Bankers Life Assur. Co.

Before STONE, GARDNER, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by the plaintiffs and the intervener-plaintiffs (1) from a final judgment upon the pleadings and (2) from orders sustaining three separate motions to quash summons and service of process on certain absent defendants. In this opinion the parties will be referred to as plaintiffs and defendants.

The plaintiffs say that fundamentally the suit is one for the declaration of trusts and the adjudication and enforcement of liens; for the following of diverted trust assets, the impression of constructive trusts thereon and the enforcement and liquidation of the trusts; and for appropriate relief in equity against the defendants on behalf of all the bondholders of the defendant Riverland Levee District.

The defendants say the complaint primarily sounds in fraud and conspiracy, and that it seeks relief accordingly.

The amended complaint fills more than 70 pages of the transcript of record, and the motions and answers occupy more than 60 pages. Yet in view of the dispute as to the object of the suit and in order to understand the orders and judgment appealed from and the contentions of the parties in this court it will be necessary to set out a summary of the alleged cause or causes of action and the objections and defenses thereto.

The plaintiffs claim that they and others in whose behalf the suit is brought are the owners of $129,500 face value of delinquent and past-due bonds issued by the defendant Riverland Levee District. The Levee District issued bonds in 1916, 1919, and 1921 aggregating $196,000 face value, all of which have been paid except those involved in this suit. The latest maturity was in 1936. The real purpose of the suit is to compel payment of the past-due bonds, and the ultimate question is whether the remedies sought are available in the federal court.

The defendant Riverland Levee District of Pike County, Missouri, is a levee district corporation organized and created by a decree of the Circuit Court of Pike County, Missouri, on September 2, 1914, pursuant to the laws of that state now comprising sections 10902 to 10957 of the Revised Statutes of Missouri of 1929, Mo.St.Ann. §§ 10902 to 10957, pp. 3592 to 3633.

It is alleged in the amended complaint that the steps required by the statute were all legally taken in the organization of the district; that the bonds were issued and the taxes levied to pay them; and that the lien of the taxes attached to the several tracts of land in the district. The installments levied for the years 1930 to 1936, inclusive, however, are wholly unpaid; and it is alleged that the levies for those years

constitute a trust and lien for the payment of the bonds.

It is then alleged that the district is insolvent; and that the amount due on the bonds, including accrued interest, is in the sum of $204,500. The several landowners in the district are all made defendants as well as the members of the board of supervisors and the collector of revenue.

The situation existing at the time of the commencement of this suit giving rise to the multiple forms of relief sought is alleged to have been brought about by a fraudulent conspiracy begun some time prior to 1929, the membership of which has changed and enlarged as time passed. The purpose and object of the conspiracy was to defeat the payment of the bonds and to vest finally in the conspirators title to a large part of the lands in the district. The conspirators included the board of supervisors of the district who owned some of the lands, and others. The board levied the taxes annually but refused to pay them and although requested to do so refused to enforce payment. About 61 percent of the lands were sold for taxes and bid in by the district, title being taken in the name of the district and of members of the board in trust for the district.

In 1937 the conspirators organized a common-law trust styled the Riverland Realty Company, and by a series of alleged fraudulent conveyances title to the lands which had been bought at tax sales by the district was vested in this trust.

About January 2, 1930, as a part of the alleged fraudulent plan, the conspirators caused a bondholders protective committee to be organized, and the defendant Chicago Title & Trust Company was named depositary of the bonds. A large part of the outstanding bonds were deposited with the depositary, and transferable certificates of deposit were issued to the owners. The committee and the depositary were prior thereto, or at that time became, members of the conspiracy. Some, if not all, of the plaintiffs were fraudulently induced to deposit their bonds with the depositary. The depositary agreement gave to the committee plenary power in the exercise of which they caused the bonds or a part of them to be transferred to the Riverland Realty Company. The result is that this common-law trust controlled by the conspirators holds title to most of the land in the district, to nearly all of the outstanding bonds, and

controls the board of supervisors of the district. In this situation the bondholders are alleged to be helpless without the aid of a court of equity; and their predicament is the more perilous because the statute of limitations has already run against actions to enforce the tax liens for some of the annual levies and in a short time all of the levies will be barred.

In the answers filed by some of the resident defendants the existence of a conspiracy is denied as well as all fraudulent conduct charged in the amended complaint.

The prayer of the amended complaint is multifarious and confusing. In brief and in substance it is demanded

First, (1) that the court take and state an account of the amount due the holders of the bonds and that a money judgment be entered against the levee district for the amount due; (2) that an account be taken of the taxes levied and assessed against the lands and appropriated to the payment of the bonds and that the tax liens be foreclosed, a special judgment entered against such lands, that the lands be sold to satisfy the liens, that after payment of costs the proceeds be distributed to the bondholders ratably; and (3) that a deficiency judgment be entered against the levee district.

Second, and in the alternative, (1) that a mandatory injunction issue commanding the board of supervisors of the levee district to enforce and collect the taxes and distribute the proceeds to the bondholders; and (2) to appoint a receiver for the lands to rent the same and to collect and distribute the proceeds to the bondholders.

Third, (1) that the fraudulent conveyances of lands leading to the vesting of title in the Riverland Realty Company be set aside and that a receiver or trustee be appointed to take charge of such lands, sell the same and distribute the proceeds to the bondholders; (2) that the Riverland Realty Company be required to deliver the bonds in its possession to the registry of the court, to a receiver or to the bondholders; and (3) that the Riverland Realty Company be dissolved and its assets distributed to the owners.

Fourth, (1) that the agreement creating the bondholders' protective committee be declared null and void; (2) that the committee and the depositary be required to account to the owners; or, in the alternative, (3) that the committee be removed, the trust dissolved, and the bonds returned

to the owners, to a receiver or to the registry of the court for collection; and (4) that the transfer of the bonds by the owners to the depositary be held void and that the Chicago Title & Trust Company be required to return the bonds to the owners, or to the registry of the court, or to pay the face value of the bonds with accrued interest.

Fifth, that the court trace the several trusts described in the amended complaint, declare the same, and require their assets to be restored to the bondholders; and for other relief.

The original complaint was filed January 17, 1939, by Frank R. Johnson, a resident and citizen of Oregon, Josephine Flanner, a resident and citizen of Wisconsin, and H. Graham, a resident and citizen of Washington, as parties plaintiff.

On October 16, 1939, an order was entered by the court granting leave to file an amended complaint and authorizing numerous bondholders to "intervene and join Plaintiffs in said amended complaint".

On the following day, October 17, 1939, the amended complaint was filed by the plaintiffs and interveners jointly against the defendants, in which the interveners were designated "intervener-plaintiffs". Ten of the intervener-plaintiffs are residents of the state of Illinois, two of Michigan, and one of Missouri. Of the defendants fourteen are residents of Missouri, eighteen of Illinois, and one of Kansas.

Process was served on the nonresident defendants pursuant to the provisions of section 57 of the Judicial Code, 28 U.S.C.A. § 118.

The court after a hearing on the motions sustained the motions to quash service upon the nonresident defendants and entered judgment on the pleadings for the defendants and against the plaintiffs. In brief the court based its rulings and judgment upon the following grounds:

1. The court is without jurisdiction because diversity of citizenship is lacking;

2. It appears from the amended complaint that plaintiffs have a complete and adequate remedy at law, and that whatever remedies they may have are provided by the statutes of Missouri;

3. That the amended complaint shows upon its face that plaintiffs have no lien upon or claim to any property within the district in which suit was brought; and

4. That plaintiffs cannot maintain the suit for the reason that prior to the commencement of the suit title to the bonds had been transferred to the bondholders' protective committee, and the depositary and two of the three members of the committee are residents of the state of Illinois and not within the jurisdiction of the court.

When the suit was originally commenced by Johnson, Flanner and Graham, all of whom are citizens of states other than Missouri and Illinois, diversity of citizenship existed. The question is whether jurisdiction was destroyed by joinder of the intervener-plaintiffs in the amended complaint, some of whom are residents of Illinois and one of the state of Missouri. After the joinder diversity of citizenship no longer existed.

█ Jurisdiction based upon diversity of citizenship having been invoked at the commencement of a suit cannot be defeated by the joinder or intervention of other parties thereafter, provided the suit is a class action or the intervention is ancillary to the main action. Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329; Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338.

Plaintiffs claim this is a class action. Whether it is or not must be determined by the allegations of the amended complaint. Rule 23 (a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary * * *;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

█ There is no allegation in the amended complaint stating the number of bondholders claimed to be represented by the

plaintiffs, nor that the bondholders are so numerous as to make it impracticable to bring them before the court. No facts are alleged which would enable the court to contrast the number appearing on the record with the number in the class or to determine whether the relationship between the parties is in any respect unique or identical and common. The amended complaint does not allege a class action. Pelelas v. Caterpillar Tractor Co., 7 Cir., 113 F.2d 629, 632; Moreschi v. Mosteller, D.C.Pa., 28 F.Supp. 613, 617; Waybright v. Columbian Mut. Life Ins. Co., D.C.Tenn., 30 F.Supp. 885, 887; Railway Express Agency, Inc. v. Jones, 7 Cir., 106 F.2d 341, 343; Bickford's v. Federal Reserve Bank, D.C., 5 F.Supp. 875.

Neither is the intervention ancillary to the suit commenced by the original plaintiffs. There is no specific property or fund in which the class have a common right within the possession or jurisdiction of the court. Lilienthal v. McCormick, 9 Cir., 117 F. 89, 96; Newton v. Gage, C.C.Cal., 155 F. 598, 605; Stewart v. Dunham, supra; Edwards v. Glasscock, 5 Cir., 91 F.2d 625, 627. Unless the effect of the pending suit is to put the property involved in the court's custody an intervention cannot be ancillary. Kendrick v. Kendrick, 5 Cir., 16 F.2d 744, 745. To permit bondholders resident in Missouri to intervene to establish their individual and severable rights as bondholders is in effect to permit them to bring an independent suit against citizens of the same state. Aiken v. Cornell, 5 Cir., 90 F.2d 567, 568.

Moreover, it is clear that the original plaintiffs voluntarily assented to the intervention of the so-called intervener-plaintiffs. Without objection they joined in the amended complaint as plaintiffs. The result is that the joinder made with the assent of the original plaintiffs destroys the jurisdiction of the court. The voluntary joinder of parties "has the same effect, for purposes of jurisdiction, as if they had been compelled to unite." Hooe v. Jamieson, 166 U.S. 395, 398, 17 S.Ct. 596, 597, 41 L.Ed. 1049; Florida Central, etc., Railroad v. Bell, 176 U.S. 321, 324, 20 S.Ct. 399, 44 L.Ed. 486; Forest Oil Co. v. Crawford, 3 Cir., 101 F. 849, 852; Gaddis v. Junker, D.C.Tex., 27 F.2d 156.

The district court also held that it was without jurisdiction to grant the relief sought in equity because the plaintiffs have a complete and adequate remedy at law under the statutes of Missouri. The court further held that plaintiffs were not the proper parties in interest to maintain the suit because they had, as shown upon the face of the amended complaint, parted with the legal title to the bonds under the depositary contract of January 2, 1930. It is unnecessary to decide the latter point for the reason that if the court is without jurisdiction in equity, even if plaintiffs may maintain a suit in another court as beneficial owners of the bonds, the judgment is right and should not be reversed.

In holding that plaintiffs have an adequate remedy at law the court considered sections 10902 to 10957 of the Revised Statutes of Missouri of 1929, known as the Levee District Code, and that the nature of the ultimate relief sought is payment of the bonds.

The Missouri "Levee District Code" has been held to be a complete law and code of procedure in itself. State ex rel. v. Hill, 211 Mo.App. 623, 249 S.W. 693; Graves et al. v. Little Tarkio D. Dist., 345 Mo. 557, 134 S.W.2d 70, 76. The code provides that after the incorporation of a levee district by decree a board of supervisors of five landowners shall be elected. It also provides for the appointment of an engineer, the assessment of benefits derived from the construction of the improvement, notice to the landowners, a hearing on exceptions, approval of the assessment; and the establishment of liens in favor of the district for the amount of the assessments upon the several tracts of land included in the district. A tax is then levied by the board for such portion of the assessment as may be found necessary to pay the cost of the improvement. The board may issue bonds not to exceed 91 percent of the total amount of taxes levied "payable out of money derived from the aforesaid taxes." When bonds are issued taxes must be levied annually to meet interest charges and maturing bonds. The tax shall be collected by the Collector of Revenue of the county. Tax liens shall be enforced by an action on delinquent tax bills instituted in the Circuit Court within six months after December 31st of the year in which the tax is levied. Such suits shall be brought in the corporate name of the district by its attorney in the county in which the property is situate. Title acquired through a sale of land under the proceeding shall be subject to the lien of all subsequent annual installments of the levee tax. The pro-

ceeds of the sale shall be accounted for to the treasurer.

Section 10885, R.S.Mo.1929, Mo.St.Ann. § 10885, p. 3580, provides: "The performance of all duties prescribed in any existing, or future law of this state governing the organization and administration of drainage or levee districts may be enforced by *mandamus* at the instance of any person or corporation interested in any way in any such district."

■■ The remedy thus provided is complete in itself. To bring about the collection of their bonds in this case plaintiffs ask the federal court to issue a mandatory injunction, appoint receivers, trace and establish trusts in property upon which plaintiffs claim a lien, and to foreclose tax liens. These remedies are not available to the plaintiffs in the federal court. The bondholders have no lien upon the lands of the levee district. The bonds are contractual obligations payable out of taxes; and the tax lien which attaches to the land is not for the benefit of the bondholders but for the public authorities. Barkley v. Levee Commissioners, 93 U.S. 258, 23 L.Ed. 893; Preston v. Sturgis Milling Co., 6 Cir., 183 F. 1, 32 L.R.A.,N.S., 1020.

In Yost v. Dallas County, 236 U.S. 50, 35 S.Ct. 235, 236, 59 L.Ed. 460, a judgment had been obtained against the county on bonds issued by it, and suit was brought in the federal court praying for the appointment of a commissioner to levy, collect and pay over the tax according to Missouri law. It was held that although the court had jurisdiction of the suit upon the contract, "The plaintiff, by bringing suit in the United States court, acquired no greater rights than were given to him by the local statutes." The court said further that "The right so given was to have a tax levied and collected * * * but a tax ordained by and depending on the sovereignty of the state, and therefore limited in whatever way the state saw fit to limit it when * * * it contracted to give the remedy." The court then said that "as the tax depended for its creation upon a sovereign act of the state * * * it is decided that it cannot be enforced by others."

That the federal court has no power to collect taxes has been so frequently decided that it is no longer debatable. The remedy provided by statute for the payment of bonds issued under authority of a law of a state is exclusive. Scott v. Neely, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; Heine v. Board of Levee Commissioners, 19 Wall. 655, 86 U.S. 655, 22 L.Ed. 223; Yost v. Dallas County, supra; Rees v. Watertown, 19 Wall. 107, 86 U.S. 107, 22 L.Ed. 72; Thompson v. Allen County, 115 U.S. 550, 6 S.Ct. 140, 29 L.Ed. 472; Louisville Trust Co. v. Muhlenberg County, 23 S.W. 674, 15 Ky.Law Rep. 397; City of Clinton, to Use of Thornton v. Henry County, 115 Mo. 557, 569, 22 S.W. 494, 37 Am.St.Rep. 415; McGinnis v. Missouri Car & Foundry Co., 174 Mo. 225, 232, 73 S.W. 586, 97 Am.St. Rep. 553; Bushnell v. Mississippi & Fox River Drainage Dist., 233 Mo.App. 921, 111 S.W.2d 946, 952; Kansas City v. Field, 285 Mo. 253, 226 S.W. 27.

■ The alleged failure of the officers to perform the duties prescribed for them by the statute cannot be remedied by the federal court. An adequate remedy for such failure is afforded by the laws of Missouri.

■ The court was without jurisdiction to entertain the cause. However, we think the judgment should be modified to be without prejudice to another suit or suits, as the bondholders may elect, in a court of competent jurisdiction. As so modified the judgment appealed from is affirmed.