## SUN OIL CO. v. HUMBLE OIL & RE-FINING CO. et al.

### Civ. No. 614.

United States District Court
S. D. Texas, Corpus Christi Division.

Jan. 25, 1950.

J. W. Timmins, Martin A. Row, Dallas, Texas, Sam G. Croom, Houston, Texas, Turner, Rodgers, Winn, Scurlock & Terry, Dallas, Texas, for plaintiffs.

Price Daniel, Attorney General of Texas, Ben H. Rice, Ill., and Russell Surles, Assistant Attorneys General, for intervenor.

R. E. Seagler, Chas. E. Shaver, Nelson Jones, Houston, Texas, for defendant, Humble Oil & Refining Co.

Jacob S. Floyd, Alice, Texas, Boone, Davis & Cox, Corpus Christi, Texas, for defendants, Kenedy and East.

ALLRED, District Judge.

Plaintiff, a New Jersey corporation, filed this action February 24, 1949, against defendants, citizens of Texas, to recover the Oil and Gas Leasehold on certain lands, alleged to be in the "Laguna Madre," in this Division, between Padre Island on the East and the Mainland of Texas on the West.

Plaintiff alleged that, pursuant to certain acts of the Texas Legislature, the Commissioner of the General Land Office and the State School Land Board advertised for bids on the lands in controversy, among others; that plaintiff was the successful bidder and secured Oil and Gas leases from the State of Texas on such lands; and that, at the same time, defendant, Humble Oil & Refining Company, acquired similar Oil and Gas leases from the State covering other lands in the "Laguna Madre," generally West and South of the lands in controversy, and between such lands and the Mainland of Texas.

Plaintiff further alleged that defendants have written the Land Commissioner, and other State officials, claiming title to the lands to be in the defendants Kenedy and East, under original grants on the Mainland to the West of the area in controversy, and claiming that Humble has title to the Oil and Gas Leasehold Estate under *leases* from the predecessors in title of defendants, Kenedy and East; that such letters are on file in the records of the General Land Office and constitute a cloud upon plaintiff's title. The prayer was for judgment removing such cloud and enjoining defendants generally from interfering with plaintiff.

Defendants answered claiming the areas in controversy as accreted to the lands owned by them upon the Mainland. Amended pleadings were filed, pre-trial hearing held, requests for admissions filed and replies made in 1949; and, at such time, the case was set for trial, on the merits, for January 9, 1950.

On January 4, 1950, the State of Texas, through its Attorney General, filed a motion for leave to intervene, accompanied by the proposed petition and a brief setting up the grounds for the proposed intervention. Notice was given and the hearing upon such motion was held on January 9, 1950. Leave to intervene was granted by the Court on January 10th, over objections of the defendants who insist that, since jurisdiction is based upon diversity of citizenship, such jurisdiction is ousted by the intervention.

The State's petition in intervention alleges title to the premises, subject to the various Oil and Gas leases of plaintiff, under which the State reserved a ⅛th royalty and is to receive annual rentals of $15,745 per year. In other respects, the State's petition is substantially the same as plaintiff's amended complaint. The State asks for judgment removing the cloud from its title and an injunction restraining the defendants from further clouding such title or from threatening or interfering with the State's officers, agents, or lessees, or "from interfering with the rights of the people of Texas, including the right of use by the public as regulated by law."

Defendants have requested the Court to reconsider the Order granting the State's motion to intervene and earnestly challenge the jurisdiction of the Court, contending that, upon intervention in *diversity cases,* the Court will re-align the parties, and, if there is not complete diversity between *all plaintiffs* and *all defendants,* jurisdiction is ousted;[1] this question of jurisdiction is important and fundamental, a question the Court should consider of its own Motion, more especially in a case promising to run, as this one, for several weeks.

It is undisputed that the State is not an *indispensable* party, Colquitt v. Roxana Petroleum Co., D.C.Tex., 34 F.2d 470, affirmed with approval, Roxana Petroleum

1. The State is not a citizen and could not, therefore, have brought or joined in bringing the action in this Court originally.

Co. v. Colquitt, 49 F.2d 1025; Tyler v. Stanolind, 5 Cir., 77 F.2d 802.

■ Intervenor says the Court has the power to permit the intervention under Rule 24(b) (2), of the Federal Rules of Civil Procedure, 28 U.S.C.A. particularly as it was amended in 1946, effective March 1948. The Rule reads as follows: "(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action; (1) * * *; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. *When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action.* In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." (Italics supplied, being the language added by the Amendment).

So far as I have been able to find, there are no decisions construing the Rule, as amended.

A Comment on the amendment appears in the 1950 Supplementary pamphlet of 28 U.S.C.A.,[2] which has been summarized in Moore's Fed. Rules, 1949, p. 1102, as follows: "This addition clearly permits the intervention of governmental officers or agencies in proper cases and thus avoids exclusory constructions of the rule, 24.-01 infra."

After careful study of the amendment, I am convinced that the State of Texas falls within its terms; and that I have the discretion to permit the intervention without ouster of jurisdiction.

*Plaintiff's claim is grounded upon Texas statutes,* imposing the duty upon the Commissioner of the General Land Office and the State School Land Board (composed of the Governor, the Attorney General and the Land Commissioner) to advertise for bids for Oil and Gas leases upon state lands, including the lands involved in this suit, and authorizing the Commissioner to issue Oil and Gas leases to the successful bidder. These leases constitute *agreements,* "made pursuant to the statutes." The *defense* is that the Texas statutes, and the leases or agreements issued pursuant thereto, have no application because the lands are not owned by the State.

Assuredly, under the amendment, the Land Commissioner and the State School Land Board could intervene as the state "agency," without subjecting the state to suit. This might have been the better practice; but, since clearly it can be done by the agency, I see no reason why the state cannot waive its immunity and intervene, since the interest of the state is manifestly greater than any of its agencies.

2. "Notes of Advisory Committee on Amendments to Rules * * * Subdivision (b). The addition in subdivision (b) permits the intervention of governmental officers or agencies in proper cases and thus avoids exclusory constructions of the rule. For an example of the latter, see Matter of Bender Body Co., D.C.Ohio 1941, 47 F.Supp. 224, affirmed as moot, N.D. Ohio 1942, 47 F. Supp. 224, 234, holding that the Administrator of the Office of Price Administration, then acting under the authority of an Executive Order of the President, could not intervene in a bankruptcy proceeding to protest the sale of assets above ceiling prices. Compare, however, Securities and Exchange Commission v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 60 S.Ct. 1044, [84 L.Ed. 1293], where permissive intervention of the Commission to protect the public interest in an arrangement proceeding under Chapter XI of the Bankruptcy Act [11 U.S.C.A. § 701 et seq.] was upheld. See also dissenting opinion in Securities and Exchange Commission v. Long Island Lighting Co., [2 Cir., 1945], 148 F.2d 252, judgment vacated as moot and case remanded with direction to dismiss complaint, 1945, 325 U.S. 833, 65 S.Ct. 1085, [89 L.Ed. 1961]. For discussion, see Commentary, Nature of Permissive Intervention under Rule 24b, 1940, 3 Fed. Rules Serv. 704; Berger, Intervention by Public Agencies in Private Litigation in the Federal Courts, 1940, 50 Yale L.J. 65."

The State has admitted and accepted in toto the stipulations and admissions made by plaintiff. No new or complicated issues are tendered. No contention was or can be made that the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Indeed, the case has now been on trial for more than two weeks, and is proceeding as rapidly as could be expected in view of its complicated issues, both of fact and of law.

Even before the adoption of the Amendment of 1946, States were permitted to intervene in many cases. In 6 Cyclopedia of Federal Procedure, 2nd Ed., p. 538, it is said: "A state may intervene for the public interest in a private suit. In a suit by the United States to quiet title to land formerly under water the state should be allowed to intervene. In a suit by the United States in the federal district court of Oregon to restrain fishing on a site in the Columbia river, claimed by plaintiff under grant from Oregon, by fisherman claiming under lease from the State of Washington, it was held that the two states could only intervene in subordination to the jurisdiction and not to challenge it. But it was held that the court had no discretion to deny their right to intervene."

Cases are cited in the footnotes to support the foregoing general statements as follows:

1. Percy Summer Club v. Astle, C.C. N.H., 110 F. 486, a suit between an alleged owner of a lake and a trespasser. The State of New Hampshire was permitted to intervene, alleging that the State owned the lake, but there was no discussion of jurisdiction or ouster.

2. United States v. Ladley, D.C.Idaho, 51 F.2d 756.

3. United States v. Columbia River Packers' Association, D.C.Oregon, 11 F. Supp. 675, Reversed, 9 Cir., 87 F.2d 421. In this case, as in U. S. v. Ladley, supra, the basis of jurisdiction was not diversity; the Circuit Court held that the States of Washington and Oregon were indispensable parties to the suit and that the trial court had no right to deny their intervention.

See also Winola Lake & Land Co. Inc. v. Gorham, D.C., 17 F.Supp. 75, wherein Pennsylvania was permitted to intervene, although the question of jurisdiction or ouster was not discussed; Brewer-Elliott Oil & Gas Co. v. U. S., 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140, a suit brought by the Government for itself and as Trustee for the Osage Indians against oil and gas lessees of the State of Oklahoma, in which that State was allowed to intervene; People of Porto Rico v. Ramos, 232 U.S. 627, 34 S. Ct. 461, 463, 58 L.Ed. 763, in which plaintiff, a citizen of Porto Rico, sued defendant, a citizen of Great Britain. The people of Porto Rico asked to be made a party as owners of the land.

Later the question of immunity in the suit was raised as well as the question of jurisdiction. The Supreme Court said: "It is, however, enough to say, that the original defendant, Wood, was properly sued, he then being a subject of Great Britain, and in possession of the land. Porto Rico, subsequently becoming a party, did not oust the jurisdiction. Phelps v. Oaks, 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888; Hardenbergh v. Ray, 151 U.S. 112, 14 S. Ct. 305, 38 L.Ed. 93."

If I am mistaken as to the right to intervene under the Amendment of 1946, or under the cases discussed above as to the right of a State generally to intervene, nevertheless I am inclined to believe that the Court does not *lose the jurisdiction it had originally,* because of the intervention. Montgomery's Manual of Fed. Jur. & Proc., 4th Ed., p. 269, reads: "Jurisdiction of the case having been acquired on the ground of diversity of citizenship of the parties, divestiture thereof does not result from a change of citizenship; and, for stronger reasons, jurisdiction is not defeated by the intervention, by leave of the Court, of a party whose joinder is not essential to a determination of the matter in litigation," citing in a footnote Wichita R. & Light Co. v. Public Utilities Commission, 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124.

In Cyclopedia of Federal Procedure, 3rd Ed. Vol. 6, Sec. 2372, p. 475, also, the above rule is stated, the Supreme Court decision in Wichita Co. v. Commission being cited

in the footnote as authority, with the additional statement: "See comment in 55 Har. Law Rev. 264, 266, suggesting that the 'sweeping language in this case based upon the analogy to substitution *seems* to have been limited by Hoffman v. McClelland,'" 264 U.S. 552, 44 S.Ct. 407, 68 L.Ed. 845. This statement in the Harvard Law Review hardly seems justified since, in the Hoffman case, in which there had been a *final* judgment (the Court retaining jurisdiction to insure obedience to its decree), the Supreme Court held that there was no "res" in the custody of the Court and that, *under the facts there involved,* the attempted action was not ancillary to the original action. In any event there is no discussion of the Wichita Co. v. Commission case in the Hoffman decision. Less than two years intervened between the two decisions and the membership of the Court was exactly the same. If, therefore, the Supreme Court intended to "limit" the Wichita Co. v. Commission decision, it seems to me they would have done so expressly.

The Rule contended for by defendants is stated in such cases as Kendricks v. Kendricks, 5 Cir., 16 F.2d 744, certiorari denied 273 U.S. 758, 43 S.Ct. 472, 71 L.Ed. 877; Edwards v. Glasscock, 5 Cir., 91 F.2d 625; Aiken v. Cornell, 5 Cir., 90 F.2d 567; Gaddis v. Junker, D.C.Tex., 27 F.2d 156; Johnson v. Riverland Levee District, 8 Cir., 117 F.2d 711, 134 A.L.R. 326, all holding, in substance, that in diversity cases, where there is no "res" in the custody of the Court, an intervention disrupting diversity ousts the Court of jurisdiction.

The Rule in this regard is summarized in Vol. 2, Moore's Federal Practice, p. 2414, as follows: "Intervention under an absolute right, or under a discretionary right in an *in rem* proceeding, need not be supported by grounds of jurisdiction independent of those supporting the original action. Intervention in an *in personam* action under a discretionary right must be supported by independent grounds of jurisdiction, except when the action is a class action." (Italics supplied.)

The general rule (that jurisdiction is not defeated by intervention), laid down in the Wichita Co. v. Commission case, supra, is

quoted on page 2417, (Vol. 2, Moore's Federal Practice), and an attempt is made to harmonize it with the foregoing.

■■■ I am convinced, however, that there is no *ouster of jurisdiction* because of the intervention by the State in this case, since it is not an indispensable party, and since it is not a citizen of the same State as defendant. Judge Hutcheson has had occasion to discuss the general rule, *as to indispensable parties,* in a recent opinion, Young v. Powell, 5 Cir., 179 F.2d 147. In that case, plaintiffs, one of several legatees, brought suit in Federal Court for the cancellation of deeds, instruments and gifts to the defendant, made by the decedent without joining other legatees and a representative of the estate, as plaintiffs. Had the others been made parties, diversity would have been destroyed. Judge Hutcheson holds that the other legatees and representative of the estate were *indispensable parties,* quoting from Hudson v. Newell, 5 Cir., 172 F.2d 848, 850, which in turn cited Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971, and Calcote v. Texas Pacific Coal & Oil Co., 5 Cir., 157 F.2d 216, 225, 167 A.L.R. 413.

Judge Hutcheson said: "Each case must be determined on its own facts. The fundamental principles are simple. They are: (1) Where federal jurisdiction rests on diversity of citizenship the diversity must be complete, and to see whether it is, all parties will be aligned as plaintiffs or defendants according to their real interests; (2) A court cannot adjudicate the rights of persons who are not parties before it; they will be brought in if possible and if they will not destroy diversity. (3) If diversity will be thereby destroyed the court will not require them to be brought in, but will enquire if there is any relief it can properly give without them; if there is, it will give it without prejudice to the rights of the absent; if none can be given the suit will be dismissed. *In the latter event the dismissal is not for want of federal jurisdiction but for lack of indispensable* parties. See Fed. Rules of Civil Procedure Rule 19, 28 U.S.C.A." (Italics supplied.)

The foregoing authorities are mentioned here in order to make the basis of defend-

ants' contentions clear. As stated in all the textbooks, there is considerable confusion, if not conflict, in the authorities. Until, however, the Supreme Court has expressly overruled Wichita R. R. Co. v. Commission, supra, and the other decisions of that Court cited herein, I am unwilling to hold that the State of Texas should not be permitted to intervene.

The public interest of the State is manifest. While it would not be *bound* by the judgment if it were not a party, it is apparent that it will be *affected* by whatever is done here. Intervention will avoid a multiplicity of suits.

The Court's Order of January 10, 1950, permitting the intervention will stand.